Phillips-Jones Company, Inc., Appellant, v. Reiling & Schoen, Inc., Respondent.

First Department, November 5, 1920.

Sales — action for breach of contract to sell and deliver goods to be manufactured by plaintiff into shirts — when contract not void for lack of mutuality — indefiniteness as to exact amount of goods to be furnished by defendant — Statute of Frauds — delivery and acceptance of portion of goods.

Action for breach of contract by which the defendant, a manufacturer of shirt fabrics, agreed to sell certain quantities of a fabric to the plaintiff which was engaged in the business of manufacturing and selling shirts. Among other things it appeared that the plaintiff was expressly obligated to give the defendant the benefit of its large force of salesmen covering the entire country in pushing the sale of defendant's material, in exhibiting defendant's sample cards, in displaying defendant's advertising matter in plaintiff's sample rooms and in introducing defendant's product to plaintiff's customers as the material from which shirts were to be ordered to be made up. It further appeared that the plaintiff in all respects had carried out its part of the agreement, except as complete performance was prevented by defendant's refusal to furnish the goods.

On all the evidence, *held*, that it was error to dismiss the complaint solely upon the ground that the contract was void through lack of mutuality.

The mere indefiniteness of such contract as to the exact amount of goods which might be ordered by the plaintiff thereunder does not destroy the contract where such amount can be admeasured by an agreed standard of measurement which, in the case at bar, was the material necessary to enable the plaintiff to meet its orders for the manufacture of shirts.

The Statute of Frauds is no defense in said action where it appears that part of the goods embraced in the contract were delivered by defendant to plaintiff and accepted and paid for by it.

Appeal by the plaintiff, Phillips-Jones Company, Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Bronx on the 20th day of January, 1920, upon the dismissal of the complaint by direction of the court at the close of the plaintiff's case after a trial at the Bronx Trial Term, and also from an order entered in said clerk's office on the 30th day of January, 1920, denying plaintiff's motion for a new trial made upon the minutes and to set aside such dismissal.

*Hirsh, Newman & Reass,* attorneys [*Benjamin Reass* of counsel, *Hugo Hirsh* and *Emanuel Newman* with him on the brief], for the appellant.

*Gould & Wilkie,* attorneys [*R. L. von Bernuth* of counsel, *Charles G. Keutgen* with him on the brief], for the respondent.

DOWLING, J.:

The complaint herein sets forth the following facts: Plaintiff is engaged in the business of manufacturing and selling shirts; defendant was engaged in the business of vending a fabric known as " silkendure," to be used for the manufacture of shirts.  In the month of March, 1918, plaintiff and defendant entered into an agreement wherein and whereby the plaintiff agreed to procure orders for shirts to be manufactured by plaintiff of said " silkendure " and to purchase of the defendant all of such fabric necessary for the making of samples which plaintiff would use to procure such orders, and also which plaintiff would need for the manufacture of shirts on the orders so procured by plaintiff up to June 1, 1918, at the price of one dollar and thirty cents per yard for the crepe lots and of one dollar and thirty-five cents per yard for the other grades, to be paid seventy days after delivery, deliveries to be made by the defendant to the plaintiff no later than the fall of the year 1918, and the defendant promised and agreed to sell and deliver to the plaintiff all of such fabric upon the terms and conditions aforesaid, and also to furnish samples of said material to plaintiff to be also used by it in procuring orders for shirts to be manufactured out of said material.

At the time when the plaintiff and defendant entered into this agreement the defendant well knew that the plaintiff, in reliance thereon, would, at a great expense to itself, procure orders for and enter into contracts for the manufacture and sale by it of shirts to be manufactured by it out of such fabric.

In accordance with and under the terms of said agreement, defendant thereafter delivered to plaintiff some of the fabric aforesaid, for which the plaintiff paid the defendant and out

of which the plaintiff made samples of shirts to be exhibited by it in procuring orders and the defendant likewise delivered to plaintiff samples of the fabric also to be exhibited by plaintiff for the purpose of procuring orders for shirts.

Thereupon the plaintiff, at a large expense to itself, caused the said sample shirts and samples of said fabric to be exhibited to various merchants in the United States, and before June 1, 1918, procured orders and contracts from such merchants for the purchase by them of shirts to be manufactured out of such fabric by the plaintiff, and plaintiff accepted such orders, and after procuring said orders and entering into the contracts therefor, plaintiff informed defendant thereof, and before June 1, 1918, ordered of defendant 630 pieces of approximately fifty-five yards to the piece of said fabric which was needed by plaintiff for the manufacture of the shirts so ordered under the agreement, and requested and demanded that defendant sell and deliver the same as provided by the agreement but defendant repudiated the agreement and informed plaintiff that it would refuse to comply with the orders, and in fact it did so refuse and fail to comply with the orders, requests and demands of plaintiff to deliver the said fabric. The fabric " silkendure " cannot be obtained in the open market or from any one other than the defendant. By reason of the foregoing, plaintiff was, and will be, unable to manufacture the shirts with which to fill its orders and contracts, and by reason thereof it has lost the profits it would have earned if it could have filled the same and which it could have filled, except for defendant's failure and refusal to sell and deliver the fabric; all to its damage in the sum of $6,236.56. There is a final allegation: " That plaintiff has duly performed all the terms and conditions of said agreement on its part to be performed, except as performance was waived by the acts and conduct of defendant, as hereinbefore set forth."

The answer denies the making of the agreement in question, as well as all the other material allegations of the complaint, and for a separate defense sets up the Statute of Frauds.

Upon the trial but one witness was called on behalf of plaintiff and he was not cross-examined. This witness, David F. Phillips, the vice-president of plaintiff, was in charge of its manufacturing department and buying. Plaintiff is one

of the largest manufacturers of shirts in this country.  Defendant's representative, Arthur Gilbert, in the latter part of February, 1918, at plaintiff's office, and in a conversation with Phillips told him that defendant was going to extensively advertise a cloth called " silkendure " and would like to have plaintiff put in that line knowing how large its business was and what a good thing it would be for defendant to have plaintiff represent it.  Gilbert said the defendant would sell plaintiff this cloth in crepe de chine for one dollar and thirty cents a yard and in broadcloth for one dollar and thirty-five cents a yard, and plaintiff was to make up samples and instruct its salesmen to go out and push the sale of the material. Defendant was to make sample cards and furnish advertising matter for the salesmen to use in the sample rooms, to push the sale of this cloth.  Phillips said: " Well, what about the price?  We must have some protection about the price?" whereupon Gilbert replied that defendant would keep the price open and fill any orders that plaintiff's salesmen might send in for this material.  Phillips wanted the price kept open until July first, but Gilbert said he must talk that matter over with his firm.  Phillips further said that he wanted to be sure the goods would be delivered, as they were going out to take orders and must be positive the goods would be furnished to fill them.  Gilbert replied that defendant was making the material right along, and they certainly would furnish it.  The shirts to be manufactured were for the midsummer and fall season, as defendant was informed. Gilbert promised to send sufficient material for the making of two shirts by plaintiff, which were to be sent to defendant, photographed and the photographs reproduced in a trade magazine, to show that plaintiff was making shirts out of the " silkendure " material.  At this time plaintiff had forty salesmen on the road selling shirts and traveling in every State in this country.  Thereafter on March 1, 1918, defendant sent to plaintiff two seven-yard cuts of crepe de chine and one of broadcloth, accompanied by a letter in which it asked plaintiff to have the two shirts made up at once therefrom " for our special advertisement which matter was taken up with your Mr. Dave Phillips."  It also promised to return the two shirts as soon as they were photographed, " so that you may

utilize them in your sample line as these two (2) patterns will be represented in the cards we are making up for you. We will have one (1) set of cards for your salesmen leaving next week, by Monday or Tuesday. Our special labels ' Silkendure Silk Shirtings ' will be attached to each card." It also stated in reference to the quantity of sample cards for the balance of plaintiff's salesmen, that it would notify plaintiff in a day or two how many styles it contemplated giving on the two qualities. Some of plaintiff's salesmen were leaving earlier than others, which was the reason why some cards were to be prepared at once. Upon receipt of this letter, on March third, plaintiff wrote defendant as follows:

" We are in receipt of your letter of the 1st and also received the two cuts sent to us.

" Before we send these shirts back to you to be photographed, we must have a more thorough understanding in reference to this proposition as according to the arrangements made with your Mr. Gilbert, you were to furnish us with forty-two sets of cards and not less than two pieces of each line in operation so that we could make our samples. Furthermore, you were to guarantee the prices to us up to July 1st, 1918.

" If these arrangements are satisfactory, would ask you to please hurry the sample pieces and the cards as our men are now on the road and we want to have same ready, so that they get a good representation.

" Awaiting your reply, we are

" Yours very truly,
" PHILLIPS-JONES CO., INC."

On March sixth Gilbert called up Phillips on the telephone and said that everything was all right and satisfactory but that he thought July first was a little too long to hold the price open, whereupon Phillips said: " Well, if that is a little too long in your opinion, we will make it June 1st." Gilbert replied that would be satisfactory. Phillips said: " Now everything is all right? Shall we go ahead?" and Gilbert said: " Yes, everything will be all right; go right ahead."

Confirming this, defendant sent the following letter to plaintiff:

" NEW YORK, *March* 6, 1918.

" THE PHILLIPS-JONES CO.,

" 1150 Broadway,

" New York City:

" GENTLEMEN.— We are sending you today four (4) sample pieces. Two (2) of the Satin Striped Crepe de Chine and two (2) of the Broadcloth. We will have 1 set of cards complete for you by Thursday or Friday, and will forward them at once to your office when received.

" In reference to the two (2) sample shirts, must ask you to hurry same as they must be in our hands by the end of this week to be photographed.

" Your prompt attention will greatly oblige

" Yours very truly,

" AG-R          REILING & SCHOEN, INC.,

Per ARTHUR GILBERT.

" P. S. In reference to price, etc., will hold open until June 1st as per phone conversation today."

Thereafter, defendant furnished to plaintiff forty-two sets of sample cards, one for each of its forty road salesmen and two office salesmen. Each set consisted of forty cards, being twenty styles each in crepe de chine and broadcloth; thus making an aggregate of over 1,600 cards. These were delivered to plaintiff's salesmen. The cards bore plaintiff's printed advertisement and it had furnished the cards to defendant, which attached its samples thereto and then returned them to plaintiff. Thereafter defendant advertised " silkendure " in magazines, and as part thereof included photographs of the two shirts made up by plaintiff. Plaintiff also was furnished by defendant with display cards of " silkendure " to be displayed in its various sample rooms by its salesmen to show it was featuring this material, and its salesmen were instructed to try and push its sale. On March eleventh defendant wrote plaintiff that it was sending forty-two " silkendure posters to be used in conjunction with the selling of our silkendure shirtings. Would kindly ask you to see that your various salesmen are supplied with one of these cards and display it prominently when showing the line."

APP. DIV.—VOL. CXCIII.      46

Plaintiff received and paid for two deliveries of " silkendure." One amounted to $18.55, being for the material used by plaintiff in making the two sample shirts; the other amounted to $318.65, being for material used in sample shirts made up by plaintiff and given to its salesmen to exhibit. The bills rendered by defendant to plaintiff for these goods bear date March 29 and March 6, 1918, respectively, and were paid. They show that the terms of sale were " two off, ten, sixty days extra," which Phillips testifies were the terms agreed on with Gilbert.

On March fourteenth defendant wrote plaintiff advising it of the delivery of the sets of sample cards, in which it was said:

" At the time we talked this matter over, the writer does not believe he gave you a definite idea as to exactly when this merchandise would be ready for delivery.

" Inasmuch as your men are showing same in their fall line, you naturally understand this merchandise will not be ready to be shipped before July and August, or in other words, for early fall and holiday trade.

" This is the delivery we are making to everybody on this line.

" Trusting you will do a nice business and let us hear from you as early as possible, particularly if we are to give you goods in the above mentioned months, we remain."

To this plaintiff replied on March fifteenth, saying:

" We expect to begin giving you orders on your lines within about four to six weeks which will bring it around May 1st. We would then expect deliveries the latter part of June or the early part of July.

" We have no doubt you will do the best you can and we will give you assortment as quickly as possible."

On April fourth defendant returned a sample shirt loaned to it by plaintiff for special photographs, saying: " This color insert will appear in all the various trade publications, April issues, which magazines will be in your hands shortly," and closing with a hope that plaintiff would receive some results from the advertising. Then on April eleventh defendant wrote plaintiff regarding the popularity of its fabric and the means being taken to increase its sale. On April twenty-

fifth plaintiff sent a written order for 144 pieces of "silkendure," in specified styles and colors, providing for "delivery at once," and stating "balance assortment if any will follow by June 1st, as agreed." In reply thereto, on April twenty-sixth, defendant wrote plaintiff denying it had ever promised at once delivering, and had not even agreed to deliver in June–July. Further, it stated that:

"Due to circumstances over which we have no control whatever, such as labor troubles, and our inability to secure raw materials, we must ask you to immediately notify all your salesmen to withdraw the various styles of our Qual. 200 and Crepe de Chine in your lines.

"In reference to the order we received from you today, we have been in communication with our mill and it will be impossible for them to deliver any of the Crepes that you purchased before Oct.-Nov. They further state, that they will not be able to manufacture the quantities as you desire. They will send us a detailed list showing the amount of pieces they can produce from the raw material they are in a position to obtain."

Further it wrote:

"We certainly regret that conditions have arisen which make it impossible for us to carry out any of our original plans in reference to this merchandise. We want you to appreciate that this is a purely involuntary action on our part, same being absolutely forced upon us, and you may be sure that same was taken with a great deal of regret, as we had hopes of carrying our plans through to great advantage to both your good selves and us.

"Because of the urgency of the case, we must ask you to take immediate action regarding same."

To this letter plaintiff replied as follows:

"We note that you cannot give us at once delivery. You may ship these goods instead during June and July. We have noted all the rest of your letter very carefully. We expect you to deliver this order in full together with any other assortment we may give you before June 1st. This line was sampled with that understanding. We sold goods which we are obligated to deliver and unless we can do so, it will be a large loss to us, which we do not care to stand."

On April thirtieth defendant wrote plaintiff that " much to our regret, due to circumstances over which we have no control whatever, we cannot give you the early delivery you want on the order, nor can we accept the entire quantity of same.  As stated in our former letter, we are referring the matter to our mill, and will advise you just how much we can deliver.  We must insist that you instruct your salesmen not to take any more orders on these goods.  If you do so it must be distinctly understood that you do so at your own risk."

Plaintiff thereupon answered, under date of May second: " We refer you to our agreement in reference to these goods.  We have nothing whatever to do with your mills, our dealings being with you, and as stated before, we expect the delivery of the goods we bought, in full."

Defendant then wrote plaintiff on May third that " in an effort to show you our good will, we have upset our mill programme considerably in order to give you some goods, and also as early delivery as possible, and therefore offer for sale the goods as per enclosed list," and renewed the notice to withdraw all samples of " silkendure " from plaintiff's line. Before June first plaintiff gave additional orders for deliveries under the alleged agreement, which defendant declined to accept, nor did it ever attempt to further perform the contract.  It was proved that the goods in question, including the designs and patterns thereof, could be procured from no one save from defendant, also that up to May 18, 1918, orders were received by plaintiff from its salesmen for shirts to be manufactured out of the " silkendure " material, but plaintiff was not allowed to show that they were in writing, or the amount thereof.  Counsel for plaintiff put the following question:  " Were those orders in writing? "  Whereupon the defendant's counsel said:  " I object to going any further into this.  The Court:  That is sufficient for the present, it seems.  Mr. Reass [plaintiff's counsel]:  Of course, it is understood that after your Honor has passed on whatever motions counsel for defendants intends to make that the case will be reopened to permit plaintiff to show the amounts of these orders and various other matters with respect to that. The Court:  If the motions made by counsel shall be adverse to his contention.  Mr. Reass:  Certainly, sir.  In other

words, I am not to be charged with any insufficiency in my case. The Court: Oh, no; not at all; this is only suspending the examination with respect to the matter of damage, counsellor, so that there may be presented now the question of law. Mr. Reass: Yes. Will it be conceded then that we did have damage? The Court: It will be conceded you had a lot of orders you did not fill, I suppose. Mr. Reass: So I can leave that phase of the case. Mr. von Bernuth [defendant's counsel]: No, I do not want to make any other concessions on the record — he got orders — The Court: You got orders. Now, if we reach that part of the case, why, then you will have the opportunity and you will have the right to present whatever evidence you have showing damage, counsel. Mr. Reass: With that statement, I am through with this witness."

The learned trial court, at the close of plaintiff's case, dismissed the complaint solely upon the ground that the contract sued upon lacked mutuality, and in so doing announced that it was assumed that plaintiff had sustained damages of which it could give proof, and that it was conceded that plaintiff took orders which it could not fill because the defendant did not give it the goods.

In my opinion, it was error to dismiss the complaint herein. I believe that upon the record there was a valid enforcible contract between the parties, which did not lack mutuality because plaintiff was not obligated to do anything thereunder. On the contrary, under a reasonable interpretation of the agreement testified to, plaintiff was expressly obligated to give defendant the benefit of its large force of salesmen, covering the entire country in pushing the sale of defendant's material, in exhibiting defendant's sample cards, in displaying defendant's advertising matter in plaintiff's sample rooms and in increasing the sale of defendant's product to plaintiff's customers as the material from which shirts were to be ordered to be made up. Defendant did in fact get the benefit of the advertising which came to it by being able to announce that its material was being used by so large a manufacturing house as plaintiff, and featured the fact that plaintiff was making shirts out of " silkendure." Plaintiff in all respects carried out its part of the agreement, and its complete per-

formance was only prevented by defendant's unqualified refusal to live up to the contract, when changed conditions made it inadvisable, in its opinion, so to do. The testimony of Phillips and the correspondence of the parties establish a binding agreement, becoming operative March 6, 1918. Whatever concessions plaintiff may have voluntarily made thereafter do not disturb or destroy the contract. The contract was complete in itself, clear and certain in its terms. Mere indefiniteness as to the exact amount of goods which might be ordered thereunder does not destroy the contract, where such amount can be admeasured by an agreed standard of measurement. Here the standard provided was plaintiff's needs for the material in sufficient quantity to meet the orders for the manufacture of shirts therefrom, as sent it by its salesmen. The defendant knew what that standard was, as it furnished the sets of cards containing its samples of quality, style and design to be used by those salesmen in obtaining orders and it furnished them for the very purpose of creating the market for the goods it proposed to sell to plaintiff. As plaintiff had never before dealt with defendant in this particular material there might have been difficulty in proving the amount of its damage, if the contract had never been performed even in part, and if no orders for goods had ever been taken by plaintiff's salesmen. But it is conceded that plaintiff did receive orders from its salesmen for shirts made out of this material, which it was unable to fulfill because of defendant's refusal to deliver the goods, and, therefore, its right to recover some damages cannot be disputed. What the amount of that recovery might properly be, if it is ultimately determined that plaintiff's contentions as to the existence of the contract and its breach are correct, we are not now called upon to determine. In any event, upon this record, plaintiff had made out a *prima facie* case and the dismissal of the complaint was error. (*Ehrenworth* v. *Stuhmer & Co.*, 229 N. Y. 210; *Wood* v. *Duff-Gordon*, 222 id. 88; *Wells* v. *Alexandre*, 130 id. 642; *Cold Blast Transportation Co.* v. *Kansas City Bolt & Nut Co.*, 114 Fed. Rep. 77; *Lima Locomotive & Machine Co.* v. *National Steel Castings Co.*, 11 L. R. A. [N. S.] 713; *Schlegel Mfg. Co.* v. *Cooper's Glue Factory*, 189 App. Div. 843.)

It is objected that the contract as proved did not fix any time when delivery was to be made. The testimony shows, however, that the orders to be taken by plaintiff's salesmen were for midsummer and fall delivery, and under such conditions the delivery would have to be made within a reasonable time. (Pers. Prop. Law, § 124, as added by Laws of 1911, chap. 571.) The question does not arise in this case, however, as the defendant repudiated its obligation and refused to proceed with the contract, even before the date when plaintiff's right to order goods under the contract terminated.

Nor does the Statute of Frauds (Pers. Prop. Law, § 85, as added by Laws of 1911, chap. 571) apply in this case, as it was proven that part of the goods embraced in the contract were delivered by defendant to plaintiff and accepted and paid for by it.

The judgment and order appealed from will, therefore, be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, SMITH and GREENBAUM, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.