PLANT MANUFACTURING CORPORATION, Appellant, *v.* HENRY
RENNER and Another, Individually and as Copartners Doing
Business under the Firm Name and Style of RENNER & MARAS,
Respondents.

First Department, December 18, 1925.

**Sales — sales agency — alleged contract did not obligate plaintiff to sell
any quantity or to purchase anything except samples — costs were later
agreed upon but no agreement was made as to quantity — contract is
not enforcible.**

A contract which, by its terms, provides that the plaintiff was to act as sole and
exclusive selling agent for the defendants, is construed as an exclusive sales
agency contract and not as a contract for the sale of merchandise.

The contract is indefinite and unenforcible, since it does not contain any agreement
whereby the plaintiff agreed to sell any particular quantity or any quantity
that could be ascertained, and since no subsequent agreement was entered into
to fix the quantity which the plaintiff would handle, although the cost of the
goods was agreed upon.

APPEAL by the plaintiff, Plant Manufacturing Corporation, from
a judgment of the Supreme Court in favor of the defendants,
entered in the office of the clerk of the county of New York on the
10th day of December, 1923, upon the dismissal of the complaint
at the close of the plaintiff's case.

*Ogren & Severy* [*Louis W. Severy* of counsel], for the appellant.

*Henry B. Culver* [*Henry L. Kanter* of counsel; *Henry M. Stevenson*
with him on the brief], for the respondents.

DOWLING, J.:

This is an action brought to recover damages for breach of con-
tract. The appellant describes the contract as one for an exclusive
sales agency. The respondents call it an executory contract for
the sale of merchandise. It appears that on the 27th day of January,
1920, the plaintiff, a corporation engaged in selling and distributing
decorative lamps and miscellaneous wrought iron goods to retail
stores and jobbers throughout the United States, and the defendants,
under the name and style of Renner & Maras, a copartnership
engaged in working metal goods, entered into a written agreement,
wherein the plaintiff is referred to as the first party and the defend-
ants as the second parties, the terms of which are as follows:

"*First.* The first party is to act as sole and exclusive selling
agent for the second parties on all Wrought Iron and other Metal
Goods of similar character which they manufacture or cause to be
manufactured for sale among retail stores, jobbers, decorators or

any other medium where the goods are to be resold at retail, except goods manufactured for:

 " Chamberlayne, Inc., 503 East 72nd St., N. Y. C.

 " The Herter Looms, 841 Madison Ave., New York City;

 " J. C. Demarest & Co., 561 Madison Ave., N. Y. C.

" *Second.* The second parties agree to refer to the first party all inquiries and orders received by them direct from any parties (except the above specified firms) for the goods covered by this agreement.

" *Third.* On all new designs whether created by the first or second parties, the second parties shall, after the approval of the design by the first party, use their best efforts to work out showroom and salesmen's samples with the utmost possible speed and where any preliminary trade opinions on first samples are necessary, there shall be no charge to the first party for such samples until they have been accepted as being ready for sale.

" *Fourth.* After finished designs and cost prices have been approved by the first party, it agrees to purchase outright all samples it requires for showroom and salesmen's purposes and will afterwards place regular orders for stock of the various designs according to such quantities and costs as shall be mutually agreed upon between both parties. The second parties shall render to the first party at the end of each month, a correct statement of all bills covering shipments during the month and the first party agrees that it will pay this amount on the basis of 2% discount for payment on or before the 10th of the following month or net for payment on or before the last day of the following month.

" *Fifth.* The second parties agree to do everything in their power to fill the first parties orders as promptly as possible and not neglect same through any other work they may be engaged on, and also agree to guarantee their product by making good without charge any reasonable claims which may be made by the first party due to defects in manufacture.

" *Sixth.* This agreement shall be in force for one year commencing from the date of the signing of this agreement by the first and second parties. If within this period the first party placed with the second parties a total amount of orders amounting to $8,000.00 or more, the first party shall have the option of continuing this agreement for the following year on the same terms as the first year. If within the second year the first party places with the second parties a total amount of orders amounting to $10,000.00 or more the first party shall have the option of continuing this agreement for the following year on the same terms as for the second year. If within the third year the first party places with the second

parties a total amount of orders amounting to $12,000.00 or more, the first party shall have the option of continuing this agreement for as long as it may desire on the same terms as for the second year referred to in this agreement."

From time to time designs were approved and numbered and the cost prices fixed. During the first year of the agreement the plaintiff placed orders with the defendants to the amount of $18,000. The defendants made deliveries on account thereof amounting to $16,004.40, and plaintiff paid $15,962.75 prior to January 27, 1921.

Plaintiff elected to continue the agreement during the second year. This was conceded by the defendants' president in his testimony taken by deposition. On January 31, 1921, defendants transferred all of the assets and business of the copartnership to Renner & Maras, Inc. On February 12, 1921, defendant Renner, as president of that corporation, wrote the following letter to plaintiff on the letterhead of the firm of Renner & Maras: "We beg to advise you that the firm of Renner & Maras has transferred the business recently conducted at the above address to Renner & Maras, Inc., a corporation created under the laws of the State of New York, and said firm is no longer in existence.

"The corporation will be glad to execute any orders with which you may be pleased to entrust it upon terms similar to those made to others."

On March 12, 1921, the corporation of Renner & Maras, Inc., by H. Renner, its president, wrote to plaintiff a letter, still on the letter-head of the firm of Renner & Maras, as follows: "This corporation does not know of any agreement or contract in existence with the Plant Manufacturing Corporation, and has no desire to enter any. In the future this corporation will extend credit to the Plant Manufacturing Corporation up to the amount of 'Five hundred Dollars' ($500.00) per month, payable in 30 days, 2% discount for cash 10 days."

It further appears that Renner & Maras, Inc., instituted an action against plaintiff on April 25, 1921, to recover the purchase price of goods delivered by the corporation under orders sent by plaintiff between March 3, 1921, and April 20, 1921.

There is testimony to the effect that after defendants refused to carry out the contract, plaintiff made efforts to procure similar goods from other sources, but those they were able to procure were unsatisfactory and the prices so high that they could not compete with Renner & Maras, Inc.

To establish damages, plaintiff showed profits on its transactions in defendants' goods of $5,141.03, or thirty-five and three-tenths per cent, during the first year. Through Frank A. Henn, a sales-

man formerly in the employ of Renner & Maras, Inc., plaintiff established that from April, 1921, to December, 1921, he sold about $22,500 worth of goods manufactured according to plaintiff's designs; that his examination of the books of Renner & Maras, Inc., showed that up to December 31, 1921, it had sold goods manufactured according to plaintiff's designs to the value of about $40,000.

In dismissing the complaint the learned trial court said: " I will dismiss the complaint on both causes of action.   *   *   * I think it is too indefinite and speculative and too vague.  There isn't anything on which a jury could assess damages, there isn't any basis on which the Court can submit it to the jury.  Your contract is too indefinite, too speculative and vague; there is no obligation created upon which damage could be ascertained."

It is clear from a reading of the agreement that this is an exclusive agency agreement, and not one for the sale of merchandise as claimed by respondents.  The agreement leaves quantities and costs to be agreed upon.  Costs were agreed upon, but it does not appear that there was ever any agreement as to quantity.

In *Phillips-Jones Co., Inc.,* v. *Reiling & Schoen, Inc.* (193 App. Div. 716) a manufacturer of shirts had entered into a contract with a manufacturer of shirt fabrics to purchase all of the fabrics necessary for the making of samples and filling of orders procured by the former up to a certain date, without specifying any amount. This court said: " The contract was complete in itself, clear and certain in its terms.  Mere indefiniteness as to the exact amount of goods which might be ordered thereunder does not destroy the contract, where such amount can be admeasured by an agreed standard of measurement.  Here the standard provided was plaintiff's needs for the material in sufficient quantity to meet the orders for the manufacture of shirts therefrom, as sent it by its salesmen."

But in the case now before us, there was no such situation as in the last cited case.  There was in the agreement between the parties no covenant upon appellant's part that it would buy from defendants for resale by it any specified quantity of goods whatever. It did not agree to buy anything except the samples for the use of its salesmen.  While there may be read into the contract some intention, by implication at least, on the part of plaintiff to push the sale of defendants' goods, there is no promise so to do.  Not only is the contract absolutely indefinite as to the amount to be purchased, furnishing no standard by which the damage for its breach could be estimated, but the agreement itself limits the amount of the orders to be placed by appellant to such quantities as shall be mutually agreed upon between appellant and respond-

ents. Such an agreement as to quantities concededly never was made.

Even the proof offered as to the amount of sales made by defendants of the accepted designs did not show that such sum did not include sales made to the three corporations expressly excluded from those upon whose orders plaintiff was to have its profit, viz., Chamberlayne, Inc., The Herter Looms, and J. C. Demarest & Co.

I am of the opinion that this case is controlled by the decision in *Schlegel Mfg. Co.* v. *Cooper's Glue Factory* (231 N. Y. 459). There Judge McLAUGHLIN wrote: " There are certain contracts in which mutual promises are implied: Thus, where the purchaser, to the knowledge of the seller, has entered into a contract for the resale of the article purchased (*Shipman* v. *Straitsville Central Mining Co.*, 158 U. S. 356); where the purchaser contracts for his requirements of an article necessary to be used in the business carried on by him (*Wells* v. *Alexandre*, 130 N. Y. 642); or for all the cans needed in a canning factory (*Dailey Co.* v. *Clark Can Co.*, 128 Mich. 591); all the lubricating oil for party's own use (*Manhattan Oil Co.* v. *Richardson Lubricating Co.*, 113 Fed. 923); all the coal needed for a foundry during a specified time (*Minnesota Lumber Co.* v. *Whitebreast Coal Co.*, 160 Ill. 85); all the iron required during a certain period in a furnace (*National Furnace Co.* v. *Keystone Mfg. Co.*, 110 Ill. 427); and all the ice required in a hotel during a certain season (*sic, G. N. Railway Co.* v. *Witham*, L. R. 9 C. P. 16). In cases of this character, while the quantity of the article contracted to be sold is indefinite, nevertheless there is a certain standard mentioned in the agreement by which such quantity can be determined by an approximately accurate forecast."

In the present case there is no such standard present as is referred to in the case last cited. In the examples cited in the opinion there was a constant factor of the buyers' requirements to be filled, which could be ascertained with at least approximate accuracy. Here the amount of goods which plaintiff might have sold to customers is purely speculative; it bound itself to buy nothing from defendants except samples; it did not covenant to push the sale of defendants' goods, actively or otherwise; and the amount of its purchases from defendants was expressly required to be fixed by mutual agreement of the parties, which was never had.

It follows, therefore, that the judgment should be affirmed, with costs to the respondents.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Judgment affirmed, with costs.