## JAY DREHER CORPORATION v. DELCO APPLIANCE CORPORATION.

### No. 53.

Circuit Court of Appeals, Second Circuit.

Dec. 6, 1937.

Epstein & Brothers, of New York City, for appellant.

John Thomas Smith, of New York City (Albert M. Levert, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment dismissing a complaint at law for insufficiency upon its face. The plaintiff alleged that he and the defendant had entered into a contract in writing on January 2, 1933, which they later modified in certain particulars, and which the defendant repudiated on April 28, 1933. The action was for the damages suffered by the breach; and the result turns upon the meaning of the contract, which so far as material is as follows. The defendant, a manufacturer, "grants to Distributor," the plaintiff, "the franchise to sell" certain of its products "and repair and replacement parts within the following territory", which "it is agreed that Company," the defendant, "may at any time reduce, enlarge or otherwise change." The plaintiff "accepts the above franchise to sell * * * and agrees to make all sales hereunder in accordance with this agreement." He "further agrees to work and develop to the satisfaction of Company the aforementioned territory and not to sell" certain of the products "or repair and replacement parts outside thereof." "This agreement shall continue in force and govern all relations * * * until cancelled. * * * Either party may cancel or terminate this agreement at any time, with or without notice." The defendant "reserves the right to sell any of its products to the United States or any Foreign Government or any Department or Bureau thereof" and "where the Delco-Appliance Product is installed permanently in the territory of Distributor, the gross profit * * * will be credited to Distributor in whose territory the Delco-Appliance is installed. On portable installations the profit will be retained by Company." The plaintiff is to "see that" government installations in his territory go forward promptly and that all repairs are promptly made. The defendant also reserves the power to sell its products to the General Motors Corporation, or its affiliates, and a general power to sell as it pleases to "manufacturers or national users for their use." The plaintiff agrees not to sell products which are to be installed in other countries and to "turn over prospects for such sales to Company." "All orders * * * received * * * by Company are subject to acceptance by Company" and the defendant agrees "to fill accepted orders as promptly as practicable," but the plaintiff "expressly releases Company from liabilities for any loss or damage arising from failure of Company to fill any orders of Distributor." The plaintiff agrees to "provide and maintain at his own expense an efficient installation and maintenance service on all" products "installed in the aforesaid territory" and "to see that all necessary repairs * * * are promptly made." He also "agrees to maintain a place of business, display room and service department * * * to have his books audited * * * by a competent accountant or auditor, and to furnish a certified copy of such audit" to the defendant. The plaintiff "in accepting this agreement agrees to work and develop to the satisfaction of Company said territory and in doing so agrees to appoint Dealers, Salesmen and other Representatives to sell" the products. The contract is to be governed by the law of New York, and the defendant reserves the power to change its models and prices at pleasure. The complaint alleged that after this contract had been executed on January 2, 1933, the parties agreed to eliminate the mutual power of cancellation, and that the defendant's power to modify the plaintiff's "territory" should not "materially alter the allotment specified."

Although the judge did not write any opinion, we assume that his reason for dismissing the complaint was because the contract lacked mutuality, or definiteness, or

both. In this, as it seems to us, he failed to consider the scope of our decison in Moon Motor Car Co. of New York v. Moon Motor Car Co., 29 F.2d 3. We did not there decide that the manufacturer impliedly promised to furnish all the cars that the dealer promised to take. The dealer's promise was therefore not an essential factor in the result; it was the manufacturer's undertaking not to employ any other dealer in the territory that was the "detriment" and the consideration; and the only question which can arise as to the promise of the defendant at bar is whether it intended to "grant" an exclusive "franchise." In terms it did not do so, but that was what it meant, and what the plaintiff expected. A priori it may be possible to have two dealers in the same territory, but the reservation to the defendant of the power to sell to enumerated persons was quite unnecessary, unless the plaintiff was to be an exclusive dealer; and there would have been no need for a cancellation clause, if the defendant had been able to sell as it pleased within the territory. Moreover, it was most unlikely that the plaintiff should have been held to his territory, if it was not to be truly his. Such being the defendant's promise, there was consideration for it moving from the plaintiff. He agreed to "work and develop the territory," to engage salesmen and the like, "to provide and maintain at his own expense an efficient installation and maintenance service," "promptly to attend to all repairs," and, as we have just said, not to sell outside his territory. Besides these, there were other ancillary duties which he accepted, such as auditing his books, and holding them open to the defendant's inspection, making weekly reports and the like. Divorced from the cancellation clause, as for the purposes of this appeal it must be, the agreement was therefore made up of mutual promises which limited the parties' freedom of action, and it was a valid contract.

The defendant answers that the plaintiff releases it from all liability for damages due to "the failure to fill any orders;" that this gives it power to refuse to fill the order in any given case; that what it is free to do in detail, it is free to do in gross; and that the breach of its promise to employ no other dealer could result in no loss. The clause does not, however, give the defendant any such power; it follows immediately upon the clause which declares that all orders which the plaintiff may send, shall be "subject to acceptance" by the defendant. The release is not from liability for failure to accept, but from failure to fill after acceptance. Its purpose is plain; the plaintiff might make engagements with customers who could hold him if the defendant defaulted, after accepting his corresponding order. All that the clause meant was that he should have no recourse over for his loss in such a case; it was an excuse for non-performance to be exercised bona fide, not a privilege to repudiate. A stronger argument might be drawn from the defendant's reserved power to refuse any specific order; by analogous reasoning if it might do that, it might declare that it would accept no orders whatever, and thus end the whole contract at once, instead of doing so bit by bit. However, to read that clause so, makes redundant the cancellation clause, which would in that event have been totally unnecessary, and corrupts the reasonable implication of the venture as a whole; which is that the defendant will use an honest judgment in passing upon orders submitted, considering them on equal terms with others it may receive and weighing them against its available supply. Moreover, even if there could have been any doubts as the contract originally stood, the rescission of the cancellation clause inevitably assumed that the defendant was to be bound to something, for it would otherwise have been absurd to eliminate the clause.

The authorities are not indeed in entire accord with our conclusion, though there is no decisive weight against it. In Velie Motor Car Co. v. Kopmeier Motor Car Co., 194 F. 324 (C.C.A.7), the manufacturer had reserved an unconditional power to cancel at will, and there was of course no contract; but in Oakland Motor Car Co. v. Indiana Automobile Co., 201 F. 499 (C.C.A. 7), that power was limited by the condition that the cancellation must be for "good cause," and in Huffman v. Paige-Detroit Motor Car Co., 262 F. 116 (C.C.A.8), upon the manufacturer's belief that the dealer was not diligent. Such conditions certainly limited the manufacturer's will, though the court in neither case seems to have thought so; moreover, both decisions went also upon the ground that the contract lacked mutuality, and for this reason they must be taken against our view. In Studebaker Corporation v. Wilson, 247 F. 403 (C.C.A.3); Carpenter v. Oakland Motor Car Co., 23 F.2d 1006 (C.C.A.2); and Ford Motor Co. v. Kirkmyer Motor Co., 65 F.2d 1001 (C.C.A.

4), there was an unrescinded cancellation clause, and this appears to have been the basis of the decision; they do not count. Nebraska Aircraft Corporation v. Varney, 282 F. 608 (C.C.A.8), turned upon the impossibility of proving any damages; it is not necessary to say whether the dealer should have been allowed to compute his loss upon the least profitable of all the models from which he must select. On the other hand in Mills-Morris Co. v. Champion Spark Plug Co., 7 F.2d 38 (C.C.A.6), a promise by the manufacturer to supply the dealer's needs was implied, and with as little to support it as here. While we prefer to rest our decision upon the exclusiveness of the "franchise," the decision must be held to be in point on the facts. In Chevrolet Motor Co. v. Gladding, 42 F.2d 440 (C.C.A.4), all the judges agreed that there was a contract until the sixty days' cancellation clause went into effect, although the seller had not apparently expressly promised to sell. We cannot find in the New York decisions anything which bears directly on this particular question, and it seems to us that the contract was valid, so far as concerned its mutuality.

There remains the question whether it is definite enough to be enforced, by which we understand only that it is practically possible for the parties to know what is the performance stipulated. Moon Motor Car Co. of New York v. Moon Motor Car Co., supra, 29 F.2d 3, at pages 4 and 5. The plaintiff was to sell all he could of the defendant's products although he was committed to no quantitive measure; consequently the defendant was not so committed either. Furthermore it was not bound to fill even such orders as the plaintiff submitted to it. But as we have already said, it *was* bound to use an honest judgment regarding them, to give them an equal standing with other orders, considering its production and its entire market. Therefore, the two factors which determined the defendant's performance were the extent of the plaintiff's orders and the extent to which the defendant could have filled them, acting in good faith; each factor is an "objective standard" within the meaning of the New York decisions which the parties expressly incorporated into their contract. Ehrenworth v. Stuhmer & Co., 239 N.Y. 210, 128 N.E. 108; Philips-Jones Co. v. Reiling & Schoen, 193 App.Div. 716, 184 N.Y.S. 387. Even so, it may perhaps be too difficult to apply them practically, but the time to decide that is not now. If such a defect develops at the trial, it is of no importance whether we should class it as a failure to prove the damages, or as showing that the defendant's performance had all along been too vague to constitute a contract. If it be the second, at least it is not a defect which can be reached by challenge to the pleadings; all we need say now is that the promises may well turn out to be capable of enforcement.

Judgment reversed.