JOSEPH GORDON, INC., Respondent, *v.* MASSACHUSETTS BONDING AND INSURANCE COMPANY, Appellant.

**Insurance — when warranty in policy of liability insurance continuing — when no basis in evidence to sustain findings of waiver or estoppel.**

1. Defendant issued a policy insuring the plaintiff " against loss from liability imposed by law upon the assured for damages on account of bodily injuries accidentally suffered by any person or persons by means of horses or draft animals." There was set forth in the policy the warranty that " no vicious horse or draft animal is used so far as the Assured knows or is informed: No exceptions." While the policy was in force an employee of plaintiff was seriously injured by one of its horses and in subsequent litigation recovered a judgment against it on the ground that the horse was vicious and by it known to be such. Defendant having refused to pay the amount of the judgment this action was brought to recover upon the policy. The evidence tending

to prove the vicious character of plaintiff's horse which caused the injuries did not establish its character as such at the time the policy of insurance was issued and it is urged that the warranty in the policy did not cover the case of a horse which thereafter became vicious to the plaintiff's knowledge.  *Held*, untenable, that the policy should be construed so as to cover horses subsequently acquired and as relating to conditions arising in respect of new or old horses from time to time during its existence.

2. The Appellate Division reversed a judgment of nonsuit upon the theory that the jury might find waiver.  In response to claims and representations by this plaintiff, defendant stated that it would assume responsibility and take charge of the litigation and did so, but it fairly, positively and repeatedly in connection with its assumption of liability limited this assumption by notice that if the accident was caused by a known vicious horse such as was specified in the warranty of its insurance policy it would not be responsible and would not pay any judgment which might be recovered.  *Held*, that there is no basis upon which could be rested a verdict that the defendant had knowingly and intentionally cast aside its rights and voluntarily and without consideration assumed responsibility for a judgment based on maintenance of a known vicious horse, which it had expressly excepted under the terms of its contract.

3. Nor can a suggestion of estoppel prevail.  There is no evidence of any desire on the part of plaintiff to settle this claim which it was prevented from consummating through any act of defendant.  There is lacking the fundamental fact necessary to bring into action the principle of equitable estoppel.  The defendant has not attempted to change its position but has been consistent in denying liability for a claim of this character.  (*Brassil* v. *Maryland Casualty Co.*, 210 N. Y. 235, distinguished; *Mason-Henry Press* v. *Ætna Life Ins. Co.*, 211 N. Y. 489, approved and followed.)

*Gordon* v. *Massachusetts Bonding & Ins. Co.*, 186 App. Div. 630, reversed.

(Submitted June 11, 1920; decided July 7, 1920.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 10, 1919, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Clayton J. Heermance* and *S. Michael Cohen* for appellant. The judgment of dismissal was right and should be reinstated. (*Hygienic Ice & R. Co. v. Phil. Casualty Co.*, 162 App. Div. 190; 222 N. Y. 583.) The letter of April 14, 1914, was not a waiver of the breach. (*Allen v. German-American Ins. Co.*, 123 N. Y. 6; *Baumgartel v. Providence-Washington Ins. Co.*, 136 N. Y. 547; *Quinlan v. Providence-Washington Ins. Co.*, 133 N. Y. 356.) The breach of warranty was not waived nor is the defendant estopped from setting it up by any agreement or by the conducting of the defense of the Kelly action or by the defendant's conduct. (*Kernan v. D. C. Mut. Ins. Co.*, 150 N. Y. 190; *Clark v. West*, 193 N. Y. 349; *Hanscome v. Ins. Co.*, 90 Me. 333; *Holland Laundry v. Travelers Ins. Co.*, 152 N. Y. Supp. 92· *M. H. Press v. Ætna L. Ins. Co.*, 211 N. Y. 489.)

*Melvin G. Palisser* for respondent. The defendant having assumed the liability, with knowledge, cannot thereafter disavow liability. If any question of fact was involved, that question was properly for the jury. (*Titus v. Glens Falls Ins. Co.*, 81 N. Y. 410, 419; *Roby v. American Central Ins. Co.*, 120 N. Y. 510; *McNally v. Phœnix Ins. Co.*, 137 N. Y. 389; *Trippe v. Provident Fund Society*, 140 N. Y. 23; *Glens Falls Cement Co. v. Travelers Ins. Co.*, 162 N. Y. 399; *Rosenbloom v. Maryland Casualty Co.*, 153 App. Div. 23; *Rosenwasser v. Globe Indemnity Co.*, 224 N. Y. 561; *Royle Mining Co. v. Fidelity & Casualty Co.*, 126 Mo. App. 327; *Walker v. Phœnix Ins. Co.*, 156 N. Y. 628; *Armstrong v. A. Ins. Co.*, 130 N. Y. 560; *Kernan v. D. C. M. Ins. Co.*, 150 N. Y. 190.) In any event defendant was liable, as the warranty regarding vicious horses is one *in presenti* and not a promissory warranty *in futuro*. (*Mayor, Lane & Co. v. Commercial Ins. Co.*, 169 App. Div. 772; *Smith v. M. & T. F. Ins. Co.*, 32 N. Y. 399; *O' Neill v. Buffalo Ins. Co.*, 3 N. Y. 122; *Catland v. Syringfield Ins. Co.*, 1 Sum.

435; *Hosford* v. *Germania Fire Ins. Co.*, 127 U. S. 399; *Lawrence* v. *Mass. Bonding & Ins. Co.*, 160 N. Y. Supp. 883; *Rogers* v. *Dubin*, 131 N. Y. 490.)

HISCOCK, Ch. J. The defendant issued a policy insuring the plaintiff ".against loss from the liability imposed by law upon the assured for damages on account of bodily injuries * * * accidentally suffered by any person or persons by means of the horses or any draft animals or vehicles, for which a charge is made in the premium." In the warranties it was stated that the number of horses owned or hired by the assured varied and the number of vehicles used in its business was stated to be " 10 more or less." There was also set forth the warranty which has become the cause of this litigation that " no vicious horse or draft animal is used so far as the Assured knows or is informed: No exceptions."

While the policy was in force an employee of plaintiff was seriously injured by one of its horses and in subsequent litigation recovered a judgment against it for over $5,000, on the ground that the horse was vicious and by it known to be such. Although defendant by the written policy was clearly, as has been assumed, protected against liability for damages imposed upon the insured under such circumstances, nevertheless, it has been held by the learned Appellate Division that a jury might hold it liable for such damages in spite of its policy. Apparently this decision has been based principally upon the view that the evidence would permit a jury to say that the defendant deliberately waived its rights under the policy and knowingly and intentionally assumed a liability for over $5,000 from which it was entirely exempt under its written contract. The consideration of this somewhat remarkable result will require a rather extended review of the evidence. And before I pass to the consideration of the alleged waiver which the Appellate Division has discussed in its opinion it seems desirable to consider

very briefly another reason now urged in behalf of plaintiff for defeating defendant's claim to immunity under its policy.

The evidence tending to prove the vicious character of plaintiff's horse which caused the injuries did not establish its character as such at the time the policy of insurance was issued and it is urged that the warranty against maintenance by it with knowledge of vicious horses only applied to the time when the policy was issued and did not cover the case of a horse which thereafter became vicious to the plaintiff's knowledge. It seems to me that this is too narrow a view of the policy and one which in common experience and carried to its logical extent would be more apt to be detrimental to the insured than to the insurer. As has been noticed, the policy does not cover any specific number of horses or vehicles but plainly indicates that the same will vary and, therefore, that new horses may be added from time to time. If the policy relates simply to horses on hand at the time it was issued it would not protect the insured against accidents caused by those subsequently acquired, and on the other hand if the policy is to be construed, as I think it should be, so as to cover horses subsequently acquired the warranty in question fairly should be interpreted as a continuing one and relating to conditions arising in respect of new or old horses from time to time during its existence. The language of the warranty as well as the purpose and spirit of it indicate that it is a continuing one and not limited to the hour when the policy was issued. This view was upheld in *Hygienic Ice & R. Co.* v. *Philadelphia Casualty Co.* (162 App. Div. 190; affd., 222 N. Y. 583). It is further to be noted that neither at the Trial Term nor at the Appellate Division does this interpretation of the policy now urged by plaintiff seem to have been advanced or considered by the court.

Passing to the consideration of the theory of waiver

which has been successfully invoked against the defendant the facts may be somewhat summarized.

Promptly upon the occurrence of the accident plaintiff through its brokers gave defendant notice thereof and asked it to give the matter its prompt attention, which it did. Almost immediately defendant received information to the effect that the offending horse was of a dangerous disposition. It seems at first to have disputed this in the interest of the assured but later it wrote to plaintiff's brokers that it had information indicating that the horse was vicious and known to be such and that " under breach of the warranty of policy we will disclaim as per carbon enclosed." The " carbon " was a copy of a letter of the same date which the defendant wrote to the plaintiff inclosing a letter received from a legal aid society showing that the horse which caused the injuries was of a vicious character, and adding " according to the warranties of your policy you had no vicious horse or draft animal so far as you knew, and in violation of this warranty we must disclaim all liability in the handling of the accident." On receipt of this letter plaintiff's president and one of its brokers interviewed the defendant through one of its managers and in that interview the former expressed great surprise at defendant's position, stated that the horse was never vicious and " that they could prove the contrary and that the plaintiff would expect the insurance company to live up to its policy and take care of the suit and pay any damages that might accrue as the result thereof." In answer to this representation and demand the defendant's manager replied that it would take care of the suit and assume responsibility if any suit was brought. It accepted the statement of the assured rather than that of the claimant against it. There was also some talk on the part of plaintiff's officer to the effect that the claim was not a serious one and could probably be settled for a small sum, and that the injured man ought to have something

and to which the defendant's official replied in substance that it would "take care of this case and settle it. You have no right to settle it. We will settle this case ourselves." Thereafter in response to a request of plaintiff's brokers in substance that this conversation be confirmed the defendant through an attorney wrote a letter to the insurance brokers of which much is made in the theory of waiver and which reads as follows: "We beg to acknowledge receipt of yours of April 13th, and pursuant to personal conversation had with Mr. Dilg (defendant's official) to which you refer in said letter, we would say that we have assumed the liability in this case."

Later, in order, there were served upon the present plaintiff (there defendant) a notice of claim by the injured employee and a summons and complaint, and in both of which the claim was made in substance that the injuries were caused by a vicious horse known by the owner to be such. The answer to the complaint was verified by an officer of the insured, there defending, and denied unequivocably such character of the horse.

Still later, verified bills of particulars were served in which it was in substance claimed that the horse was of a vicious character and propensities and had kicked others. As a result of these the present defendant wrote plaintiff a letter referring to the bill of particulars and stating: "You will recall, we agreed to handle this matter on your behalf, believing you were being wrongly sued * * *. We desire to remind you, if it is proven by the Plaintiff the horse was vicious to your knowledge prior to the happening of this accident, this company will not be responsible for any judgment obtained against you." In answer to this letter plaintiff wrote defendant again insisting that it had several witnesses to prove that the horse was not of a vicious character and that it could prove that the horse was aggravated and provoked into kicking by employees. Thereafter plaintiff's president called upon defendant's officers and again stated

that it had had the horse for six years " and never had
a complaint about its kicking anyone only the man
Sweeney, whose foot the horse had stepped upon " and
stated " that the plaintiff expected them (the defendant)
to pay the bill as they had agreed to and that he figured
they would have no further trouble; that it was up to
the company and that the insurance required them to
assume responsibility and pay any judgment obtained."
To this the defendant's officer replied in substance that
if the horse had never kicked anybody it would be respon-
sible; that it had assumed responsibility and would look
after the case.

When the case was about to be reached defendant
notified plaintiff and stated: " Pursuant to the terms of
our letters to you, we have prepared this case for trial,
but will not be responsible for any judgment which may
be rendered against you at said trial, if it is proven that
you had knowledge of the vicious character of the horse
in question, before the accident to Mr. Kelly."

The trial resulted in establishing conclusively against
the plaintiff for the purposes of this litigation that its
horse was vicious, that it knew it, and that when it
stated the contrary to defendant and demanded that it
defend the suit it misrepresented the facts and concealed
the truth, and asserted rights to which it was not entitled.

I am unable to find in the evidence which has thus
been summarized any basis upon which could be rested
a verdict that the defendant had knowingly and inten-
tionally cast aside its rights and voluntarily and without
consideration assumed responsibility for a judgment of
over $5,000, based on maintenance of a known vicious
horse, which it had expressly excepted under the terms of
its contract. There is no claim that the defendant by any
formal declaration which would comply with the terms
and conditions of its policy of insurance, has modified
its contract and extended its obligations. The claim is
that by acts and statements it has given such evidence

of an intention to do this as would permit a jury to find as matter of fact that it had done it. Since the acts and statements from which it is said that this inference may be drawn are all part of a connected series, it is evident that we must take into account the entire series in determining the effect and meaning of the conduct of the defendant. It would be utterly unjustifiable to wrench some act or statement from its appropriate setting and then take advantage of its isolated situation to give to it some special meaning for the purpose of justifying a proposed conclusion. And yet it seems to me that this is what unwittingly has been done; that certain expressions by the defendant that it would assume or had assumed responsibility in respect of the accident have been detached from their appropriate connections and then given a meaning wholly at variance with what the defendant intended or even the plaintiff expected. When we consider, as we must, the entire chain of communications between the parties in their just relation, these are the controlling features which stand out without dispute and without obscurity:

On the happening of the accident promptly the plaintiff notified defendant thereof and demanded that it should take charge. Subsequently in view of suggestions by the defendant that this might be an accident caused by a known vicious horse for which it was not responsible, plaintiff repeatedly and in various forms, including a verified answer to a complaint, denied that it was such a case, insisted that defendant was responsible and demanded that it proceed accordingly. In response to these representations and these demands defendant announced that it would assume responsibility and take charge of the litigation and did so, but it fairly, positively and repeatedly in connection with its assumption of liability limited this assumption by notice that if the accident was caused by a known vicious horse such as was specified in the warranty of its insurance policy it

would not be responsible and would not pay any judgment which might be recovered. It acted precisely in accordance with these statements. It accepted, as it had a right to, the statement of the assured and defended the action in a manner which is not criticised, and it was only when the judgment established conclusively for the purposes of this litigation that the plaintiff had misrepresented the facts and misled defendant into defending the action, that exactly in accordance with its notices it refused to proceed farther or to pay the judgment.

Looking at the entire series of communications, I confess that I am unable to see how the defendant with greater precision could have followed the lines of its agreement and satisfied the demands of its customer while at the same time it preserved its own substantial and undoubted rights. The insured said it was guiltless of any such fault as was charged and demanded protection in accordance with the policy. So far as I perceive no one claims that the defendant might not believe its customer and if it did it was its duty to defend as it did. But in doing this it took the precaution consistently and repeatedly to say that if it turned out that the insured was wrong and had harbored a vicious horse which caused the trouble it would stand upon its policy and refuse liability. As has already been suggested, it is entirely unjustifiable, as has been done, to select an isolated expression used on one occasion by defendant that it had " assumed the liability in this case " and give to it a significance running counter to the entire current of extensive and long-continued negotiations. That statement was made just after defendant had notified plaintiff that it would not be responsible if the horse was known to be vicious and just after the plaintiff had assured it that the animal was not vicious and of course on the simplest principles of interpretation defendant did not mean that it was recanting the attitude it had

28

just taken but that it was assuming responsibility on plaintiff's theory and statement that the horse was not vicious.

Neither do I see any force in the criticism which seems to be made in the opinion of the Appellate Division on the defendant because it adopted a course under which in any event it would win. It is said if the horse was known to be vicious it was not liable under its policy; if the horse was not vicious the insured was not liable. Again it may be asked what else was the defendant to do; it could not change the controlling facts. The parties by their voluntary agreement had provided that defendant should not be liable in the first case, and so far as concerned the second aspect the defendant could scarcely be criticised if it successfully defended the insured, even though that result did relieve it. It discharged its duty when it answered the demand of the insured and defended it.

While the decision of the court below seems to be mainly and substantially placed upon the ground of waiver there still occurs a somewhat general suggestion of estoppel, in which there are coupled a reference to the mere opinion expressed by one of plaintiff's officers that the action could probably be settled for a small sum, and the statement that defendant having assumed responsibility and undertaken defense of the suit cannot now decline to pay the judgment. There is in my judgment nothing in either suggestion or in both combined.

There is no evidence of any desire on the part of plaintiff to settle this claim which it was prevented from consummating through any act of defendant. Its only suggestion of settlement was of one to be made by defendant of an invalid claim as a matter of charity and this the latter declined to make or permit at its expense. And there are two perfectly good answers to this suggestion. In the first place plaintiff never demanded any settlement. It merely expressed the unsupported opinion that one could be made. It understood perfectly well that none was made and repeatedly thereafter insisted

that defendant should proceed to litigate the claim. In the second place it was never deterred by defendant from settling the claim upon which judgment was finally recovered. Defendant's denial of any liability for that character of claim necessarily left plaintiff free to settle it if it so desired.

Substantially the same answer is to be made to the other argument in favor of estoppel, that defendant having taken charge of the litigation excluded the plaintiff from action and a judgment now having been recovered it cannot escape payment. If views already expressed are correct defendant never lulled plaintiff into any false sense of security in respect of the claim that was established. Defendant took charge of the litigation on plaintiff's demand. It took its position and indicated its proposed course with perfect clearness and if plaintiff desired to settle the claim which was established against it or defend itself it was at perfect liberty to do so. There is lacking the fundamental fact necessary to bring into action the principle of equitable estoppel. The defendant has not attempted to change its position. It has been perfectly consistent from beginning to end in denying liability for a claim of this character.

This case does not at all come within the principles upon which was based our decision in *Brassil* v. *Maryland Casualty Co.* (210 N. Y. 235). In that case the defendant was bound by its policy, as one alternative, to undertake defense of an action against its insured just as it did do. The insured had an opportunity to settle the litigation for the amount of its insurance policy, but under the terms of the policy it could not do this without the consent of the insurer. The insurer refused to permit the settlement, insisted upon going ahead with the litigation for its own benefit under the policy, and then when a judgment was recovered against the insured for a much larger amount than the insurance, the insurer proposed to pay up its liability under the policy and

abandon the litigation, leaving the insured to pay a substantial balance over and above the policy. The insured refused to submit to this course of treatment, took an appeal which the insurer had refused to take and having succeeded on that appeal with resulting benefit to the insurer as well as to himself, sought to recover from the insurer the costs of the appeal. Applying broad and perhaps somewhat general principles of justice to the decision of the case we refused to reward with success the efforts of the insurance company to carry out such an inequitable and unjust course towards its insured as this and compelled it to pay expenses of the litigation. Certainly that case bears no resemblance to this one.

· Rather this case comes well within the decision of *Mason-Henry Press* v. *Ætna Life Ins. Co.* (211 N. Y. 489). In fact I am unable to distinguish the two cases in principle.

In that case an action was brought against the insured for personal injuries based upon various claims of fault and amongst which was the one that the insured had hired the injured employee in violation of the provisions of the statute which forbade employing minors under certain ages. Under its policy the defendant would not be liable for any recovery against the insured based upon this latter ground but would be liable for a recovery based upon certain other grounds set forth in the complaint. The insured insisted that it had not violated the statute, that any liability was of such a kind that it was insured by the defendant and demanded that the latter should defend the action. Defendant, knowing just as in this case that one alleged ground of liability of the insured was one not covered by its policy, relying on the denial by the insured of such liability, complied with the demand, assumed responsibility and took charge of the litigation, but it notified the insured that it would not be liable for any recovery which might be based upon a violation of the statute and from which it was exempted under the terms of its policy. Liability was

established against the insured solely upon the ground that it had violated the statute, and when the defendant refused to pay the judgment thus recovered the plaintiff sought to make it. We held that the insurer had lived up to its obligations under the policy, had acted precisely in accordance with its rights, and had avoided any waiver or sacrifice of its exemption by notifying the insured as it did that it would not be responsible for a recovery of a kind which was excepted from the terms of its policy. There was said what seems to be very pertinent here: " Under all of these circumstances it is impossible to see how the respondent ever indicated any waiver of its rights or ever so misled the insured that it is now estopped from asserting those rights. It called attention to the alleged violation of law and to its exemption from liability for claims arising from such violation. It discovered evidence strongly indicating that there had been a violation of law which would bring the exemption into effect and urged a settlement of what was regarded as a dangerous case for the benefit of both parties. The appellant's attitude from beginning to end was that it had been guilty of no violation, that the allegation of violation was false and that the insurer under its policy was compelled to defend the action. The jury has found that the appellant was inaccurate in its assertion that there had been no violation of law. It has established the facts as making the accident to the employee of a character not covered by respondent's policy and for which the latter has plainly insisted that it was not liable as insurer." (p. 498.)

That seems to be this case and I recommend that the order of the Appellate Division be reversed and the judgment of the Trial Term affirmed, with costs in this court and in the Appellate Division.

COLLIN, HOGAN, MCLAUGHLIN, ANDREWS and ELKUS, JJ., concur; POUND, J., dissents.

Order reversed, etc.