BUSHWICK–DECATUR MOTORS, Inc., v. FORD MOTOR CO.

No. 256.

District Court, E. D. New York.

Jan. 18, 1940.

918

Hurd, Hamlin & Hubbell, of New York City (Edward E. Weadock, of New York City, of counsel), for defendant, for the motion.

Daru, Hellman & Winter, of New York City (Oswald Vischi and Daniel S. Levy, both of New York City, of counsel), for plaintiff, opposed.

CAMPBELL, District Judge.

This is a motion for Summary Judgment, pursuant to Rule 56(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, in favor of defendant against plaintiff, dismissing the amended complaint, and for such other and further relief, as to the Court may seem just and proper.

This is an action brought by the plaintiff against defendant, Ford Motor Company, to recover damages for the alleged wrongful termination and cancellation of a so-called automobile and "dealership contract" between the parties, and for a breach of certain other alleged related agreements.

This action was instituted in the Supreme Court of the State of New York, Queens County, but was duly removed to this Court, as to the defendant, Ford Motor Company.

The first cause of action against defendants other than Ford Motor Company alleged conspiracy to interfere with plaintiff's contractual rights, and was not removed to this Court.

The action pending in this Court consists of the second, third, fourth and fifth alleged causes of action of the amended complaint, and this motion, made by the defendant, for a Summary Judgment, dismissing the amended complaint, is directed to each of said causes of action.

The action pending in this Court is at issue, but has not been noticed for trial.

Briefly stated, the causes of action pending in this Court are as follows:

In the second cause of action, it is alleged that on or about December 12th, 1933,

plaintiff's assignor entered into a contract with defendant, which is described in the amended complaint as a "dealership contract", and identified in the Bill of Particulars as "Sales Agreement" by which title I will hereafter refer to it; that on or about January 18th, 1934, said Sales Agreement was assigned to plaintiff with the consent of the defendant; that plaintiff performed all of the obligations upon its part under said contract to be performed, and that on or about September 14th, 1937, defendant arbitrarily, wrongfully, contrary to the custom of the trade, and contrary to its own practice, terminated and cancelled the Sales Agreement in bad faith, to plaintiff's damage in the sum of $200,000.

In the third cause of action plaintiff repeats the allegations with respect to the making, assignment and performance of the Sales Agreement, and further alleges that in consideration of plaintiff's agreement to invest further sums of money in building up its business, it was mutually agreed that the said Sales Agreement should not be cancelled by Ford Motor Company, "except for a just and proper cause and upon adequate hearing first being given to the plaintiff"; that subsequently, without just cause, and without adequate opportunity to plaintiff to be heard, defendant cancelled the said Sales Agreement, to plaintiff's damage in the sum of $200,000.

In the fourth cause of action there are repeated the allegations of the second cause of action, with respect to the Sales Agreement, and the further allegations that in consideration of the execution of the said Sales Agreement, defendant promised to allot to the plaintiff a more profitable territory, as soon as such more profitable territory should become available, and that defendant failed, and refused to allocate such territory, although it did become available in the County of Queens, all to the plaintiff's damage in the sum of $50,000.

In the fifth cause of action it is alleged that said Sales Agreement gave defendant, upon termination thereof, the option to repurchase from plaintiff all of defendant's products in plaintiff's hands at the time of termination, and that upon the termination of this agreement, defendant exercised such option to repurchase, but thereafter failed, and refused to repurchase, all to plaintiff's damage in the sum of $25,000.

In the amended answer, the making of the Sales Agreement, and its assignment to plaintiff, is admitted, but the wrongful termination thereof, and the making of the alleged agreements set forth in the third, fourth and fifth causes of action, is denied. Several affirmative defenses are alleged in the amended answer as well as a small counterclaim, but they are not relevant on this motion.

The Sales Agreement, as made between the defendant described as the "Company", and plaintiff's assignor described as the "Dealer", provided as follows:

Article (1) provided: "Company agrees to sell and Dealer agrees to purchase Ford automobiles, trucks, chassis, automobile bodies, pick-up bodies, truck bodies, cabs, accessories and parts (hereinafter sometimes collectively referred to as Company's 'Products') upon the terms, conditions and provisions hereinafter specifically set forth and subject to the right reserved to Company to sell to other Dealers and direct to retail purchasers in any part of the United States without obligations for any commission to Dealer on any such sale."

Article (2) provided that the Company would sell its products to the Dealer at such prices as it fixes from time to time.

Article (3) required the payment by Dealer of additional charges for freight and packing.

Article (4) required in effect the payment of taxes by Dealer.

Article (5) provided: "'List Prices' of all Ford products shall be subject to change at any time and from time to time without obligation on Company to adjust with Dealer as to price of any product shipped, or paid for but not in transit, at the time such price change becomes effective."

Article (6) related to the title to products until date of payment by Dealer to Company.

Article (7) covered several matters, among others, including the place and manner in which Dealer shall maintain its business, demonstrators, retail buyer's order and deposit, the effect of termination on orders at hand, repair parts, advertising, Company's trademark and patents.

Article (8) required the Dealer to give accurate and timely reports of its business every ten days.

Articles (9), (10), and (11) provided:

"(9) (a) Dealer will furnish Company on Company forms, prior to December 31st of each year, an estimate of the number of Ford automobiles, trucks, cabs and chassis that Dealer will purchase from Company during each month of the succeeding year. Company agrees to give careful consideration to such estimates, but expressly reserves the right to follow or depart from such estimates according to its discretion. Company shall in no way be liable for any delay in shipments, however caused, nor for shipments over other than specified route."

(b) (Omitted because not material here.)

"(c) This agreement may be terminated at any time at the will of either party by written notice to the other party given either by registered mail or by personal delivery, and such termination shall also operate to cancel all orders theretofore received by Company and not delivered.

"(d) Upon termination of this agreement Company may, at its option, repurchase from Dealer all or any part of Company's products in Dealer's possession, and Dealer agrees to sell such products to Company at the price paid therefor plus freight but less any liens or encumbrances thereon. And Dealer hereby grants Company the right to enter the premises of Dealer upon termination of this agreement and to take possession of all or any part of said products upon tender of the purchase price thereof, determined as above.

"(e) This is a Michigan Agreement and shall be construed according to the laws of the State of Michigan. If any provision of this agreement is held to be invalid or unenforceable, this contract shall as to such provision be considered divisible and the balance of the agreement shall be valid and binding.

"(f) This agreement may not be assigned by Dealer without written consent of Company.

"(g) If prior to the date hereof a sales agreement shall have been in effect between the parties hereto, the Company and Dealer agree, each in consideration of release by the other from the obligations and rights thereunder existing, that such prior sales agreement is hereby terminated and cancelled, and after the date hereof all the rights and obligations of the parties hereto shall be governed and controlled exclusively by this agreement.

"(h) The terms of this agreement may not be enlarged, varied, modified or cancelled by any agent or representative of Company, except by an instrument in writing executed by the President, Vice President, Secretary, or Assistant Secretary of Company, and Company will not be bound by any alleged enlargement, variation, modification, or agreement not so evidenced.

"(10) As a condition precedent to the Company entering into this agreement, the Dealer represents and warrants that he has carefully read over each and every part of this agreement, and understands each and every term thereof; and further represents and warrants that no representations or statements have been made to him by the Company or its officers, agents, employees or representatives, which would in any way tend to add to, modify or change the terms, or any one or more of them, of this agreement.

"(11) This agreement shall not bind Company until it is signed by either its President, Vice President, Secretary or Assistant Secretary."

To the moving affidavits is attached a photostatic copy of the Sales Agreement, identified by plaintiff's Bill of Particulars, and also a photostatic copy of the written assignment thereof to plaintiff, and said affidavits allege that during the period referred to in the amended complaint the following persons occupied the following offices in defendant; Edsel B. Ford, President; P. E. Martin, Vice President; B. J. Craig, Secretary; John Crawford, Assistant Secretary; A. G. Coulton, Assistant Secretary (from May 1st, 1934); that Clarence A. Esslinger was the Manager of Ford's Edgewater branch during the entire period referred to in the amended complaint, and Gus Simpson, William E. Moke and Lloyd Cota were subordinates of his, at said branch, and Jack Davis, by which name it presumptively was intended to designate John R. Davis, not a subordinate of Esslinger at the Edgewater branch, but employed at defendant's home office in sales and promotional work, who were alleged to have made oral contracts modifying the Sales Agreement, were not officers of the defendant, and were not authorized to modify the Sales Agreement.

This brings us to a consideration of the first cause of action. The Sales Agreement, by its term Article (9) (c) was terminable at any time, at the will of either party, and does not bind defendant to sell or deliver, or plaintiff to buy, nor does it

impose any liability on defendant if it terminates or refuses to make sales to the other party. The Sales Agreement was to be observed by the parties only so long as was mutually satisfactory. There is no allegation in the amended complaint, or Bill of Particulars, that defendant did not act in accordance with the expressed terms of the Sales Agreement, when it terminated the same. The provision that the Sales Agreement might be terminated at any time, at the will of either party, by written notice, is binding and enforcing. Ford Motor Company v. Alexander Motor Company, 223 Ky. 16, 2 S.W.2d 1031; Willard, Sutherland & Company v. United States, 262 U.S. 489, 494, 43 S.Ct. 592, 67 L.Ed. 1086.

There is no provision in the Sales Agreement, either as to its duration by time or number of units to be sold, nor for damages upon termination.

The Sales Agreement is, by its terms, provided to be a Michigan agreement, and to be construed according to the laws of the State of Michigan, and under the laws of the State of Michigan a contract containing the provision for termination at will, as provided by Article 9(c), is valid and binding. Fuchs v. Standard Thermometer Company, 178 Mich. 37, 144 N.W. 484.

This, it seems to me, is clearly shown, as in that case a recovery by plaintiff was allowed solely because it was found that plaintiff should be paid commissions on reorders secured during the succeeding year by the defendant, and the plaintiff was entitled to compensation for such reorders.

This holding is not affected by the so-called "satisfaction cases". Isbell v. Anderson Carriage Co., 170 Mich. 304, 136 N.W. 457; Garlock v. Motz Tire & Rubber Co., 192 Mich. 665, 159 N.W. 344, in which cases it is held that when a contractual relation is of a character involving personal efficiency, energy, initiative, and business experience to be performed to the satisfaction of one of the parties, the contract may be terminated if it be not satisfactorily performed.

In a case where the contract in question was substantially the same as the contract in this case, the changes being minor, and immaterial, and in which is found the following provision: "This Agreement may be terminated at any time at the will of either party * * *", it was held that the termination at the will of the seller imposed no liability on the seller, if it terminated the agreement, or refused to make sales. Ford Motor Co. v. Kirkmyer Motor Co., Inc., 4 Cir., 65 F.2d 1001; Jordan v. Buick Motor Co., 7 Cir., 75 F.2d 447; Motor Car Supply Co. v. General Household Utilities Co., 4 Cir., 80 F.2d 167; E. I. Du Pont de Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 89 A.L.R. 238; Metro-Goldwyn-Mayer Distributing Corporation v. Home Theatre Co., 7 Cir., 71 F.2d 225; Velie Motor Car Co. v. Kopmeier Motor Car Co., 7 Cir., 194 F. 324; Studebaker Corp. of America v. Wilson, 3 Cir., 247 F. 403.

Plaintiff contends that underlying every contract and every provision thereof, there is the implied obligation of good faith and rests most strongly upon the decision in Brassil v. Maryland Casualty Co., 210 N.Y. 235, 104 N.E. 622, 624, L.R.A.1915A, 629; but it does not seem to me that, that is authority in support of plaintiff's contention, under the facts in this case, as the Court there said: "There is a contractual obligation of universal force which underlies all written agreements. It is the obligation of good faith in carrying out what is written"; and what is written in the Sales Agreement in the case at bar is: "This agreement may be terminated at any time at the will of either party * * *".

Under the particular facts in the Brassil case, the Court found a right, on the part of the plaintiff, but those facts, which need not here be repeated at length, are very different from the facts in the case at bar, and it must not be forgotten that the Court in the Brassil case stated in its opinion, "The circumstances of this case are peculiar. We do not go beyond them in making our decision", and that the Court of Appeals of the State of New York intended to limit the Brassil case to the peculiar circumstances therein shown, is further sustained by its opinion in Gordon, Inc., v. Massachusetts Bonding & Ins. Co., 229 N.Y. 424, 128 N.E. 204; Best Building Company, Inc., v. Employers' Liability Assurance Corporation, Ltd., 247 N.Y. 451, 160 N.E. 911, 71 A.L.R. 1464.

Plaintiff also cites Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214, which involved an exclusive agency contract and had no similarity to the case at bar, and is clearly distinguishable therefrom.

Plaintiff also cites Wigand v. Bachmann-Bechtel Brewing Company, 222 N.Y. 272, 118 N.E. 618, in which the Court implied a term in the contract, but the contract contained no expressed provision to the con-

trary, which is no authority in the case at bar, where plaintiff seeks, by implication, to overcome the expressed provision with reference to cancellation. This is also true in Simon v. Etgen, 213 N.Y. 589, 107 N.E. 1066, also cited by the plaintiff.

Plaintiff also strongly relies upon the case of Moon Motor Car Co. of New York v. Moon Motor Car Co., Inc., 2 Cir., 29 F.2d 3, 5, which at first appears to be contrary to the opinions in the cases hereinbefore cited by the defendant but on a careful reading it is not, because in the contract considered in that case, the right of cancellation could not be exercised at will, or for just cause, but only for breach of the conditions of the contract, and as the Court there said: "These were facts independent of the maker's will; they were not even conditional on his satisfaction", therefore, it does not seem to me to be authority in the case at bar.

That is likewise true in the case of Jay Dreher Corporation v. Delco Appliance Corp., 2 Cir., 93 F.2d 275, 277, also cited on behalf of plaintiff, in which it clearly appears from the opinion that the cancellation clause was not before the Court, as the Court said in its opinion: "Divorced from the cancellation clause, as for the purposes of this appeal, it must be, the agreement was therefore made up of mutual promises which limited the parties' freedom of action, and it was a valid contract." Furthermore, plaintiff was in error in stating that the Court in that opinion refused to be bound by the decision in Ford Motor Co. v. Kirkmyer Motor Co., Inc., supra, because what the Court did do, was to distinguish that decision because of the termination clause in the Sales Agreement, when it said, 93 F.2d at page 277: "In * * * Ford Motor Co. v. Kirkmyer Motor Co., Inc., [4 Cir.], 65 F.2d 1001, there was an unrescinded cancellation clause, and this appears to have been the basis of the decision."

■ The allegations in the plaintiff's complaint, with reference to custom in the trade and previous dealings, are immaterial, as the agreement here in question is clear upon its face and cannot be varied by proof of such allegations. Green v. Wachs, 254 N.Y. 437, 173 N.E. 575; Gravenhorst v. Zimmerman, 236 N.Y. 22, 139 N.E. 766, 27 A.L.R. 1465.

In the provisions of the Sales Agreement it is provided that it shall be construed according to the laws of the State of Michigan. Plaintiff cited Watkins Co. v. Rich, 254 Mich. 82, 235 N.W. 845. Plaintiff contends that the termination clause in the contract before the Court in that case was "almost identical in language to the clause contained in plaintiff's dealership contract." It seems to me, however, that the difference in the clause considered in that case and the clause considered in the case at bar is vitally different. The clause in the contract, considered in the Watkins case, did not contain the provision that it might be cancelled "at the will of either party."

■■ It seems clear to me from a reading of the whole Sales Agreement in the case at bar, that the words "at any time" express the time limitation and the words "at the will" are an expression of the wish, desire or pleasure of either party, and are not limited to any other cause or condition.

In the contract considered in Watkins v. Rich, supra, there was no provision that cancellation should be at the will of either party, but simply that it might be terminated at any time and, therefore, on the facts as found, in that case, the Court very properly found that there was implied thereby the obligations of good faith.

■ The Sales Agreement in the case at bar was accepted by both parties without fraud or coercion, and considering the time that it was in full force, there is no proof that it was procured to defraud the plaintiff. Failure of the officers of plaintiff to read the Sales Agreement before taking an assignment thereof, if that really happened, would not relieve the plaintiff from the terms of the Agreement, as within quoted, with reference to termination, as such term were clearly expressed therein, and leave no room for the making by this Court of a new and different contract by implication.

The distinction I have drawn between the contract in Watkins Co. v. Rich, supra, and the contract in the case at bar, is illustrated in Bitterman v. Gluck, 256 App. Div. 336, 9 N.Y.S.2d 1007.

■ As a matter of law defendant is entitled to a Summary Judgment, dismissing the second cause of action.

As to the third cause of action:

In the third cause of action it is alleged that defendant, after execution of the Sales Agreement, and in consideration of

plaintiff's agreement to invest further sums of money in promotion and sale and distribution of Ford products, agreed that "the aforesaid dealership contract would not be cancelled by defendant Ford Motor Company, except for a just and proper cause and upon adequate hearing first being given to plaintiff," and that thereafter, without just cause and without adequate hearing to plaintiff, defendant wrongfully cancelled said agreement.

In paragraph seven of the Bill of Particulars, it is stated that the agreement was oral.

The alleged oral agreement was in direct conflict with the provisions of Article 9(h) of the Sales Agreement and constituted a variation and modification thereof, because, not only was it alleged to be oral, but the person alleged in the Bill of Particulars to have made such oral agreement on the part of the defendant was not either the President, Vice president, Secretary or Assistant Secretary of the Company, the only persons who according to the terms of such Sales Agreement were authorized on the part of the defendant to enlarge, vary, modify or cancel agreement.

The plaintiff had notice of the limitation of authority to bind the defendant to holders of enumerated offices and that it must be in writing. Such limitation of the authority of its agents by the defendant has been sustained in the Federal Courts. Fountain & Herrington v. Mutual Life Ins. Co., 4 Cir., 55 F.2d 120.

It has likewise been sustained in the Courts of the State of New York. Mapu v. Agricultural Insurance Co., 244 App. Div. 268, 278 N.Y.S. 958.

Plaintiff contends that even although the Sales Agreement provided that it could be modified only in writing, it could be modified orally, and cites: Westchester Fire Ins. Co. v. Earle, 33 Mich. 143; Morley Brothers, Inc., v. F. R. Patterson Construction Co., 266 Mich. 52, 252 N.W. 213, 91 A.L.R. 1418; Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378; The Argentino, D.C., 28 F.Supp. 440.

Even if plaintiff's contention be in accord with the decisions of the Courts, the fact remains that by the Sales Agreement plaintiff was informed as to who were the only agents by whose acts in modifying the agreement the defendant would be bound and there is no showing of ratification by the defendant or any of its officers of any oral agreement modifying the Sales Agreement made by any person in the employ of the plaintiff

If, however, the oral modification could be upheld, when not made by one of the agents designated by the defendant, it still would not be enforceable because an agreement to the effect that the Sales Agreement could not be terminated except for "just and proper cause and after adequate hearing" would be void and unenforceable as too uncertain, vague and indefinite. Cummer v. Butts, 40 Mich. 322, 29 Am.Rep. 530; Davie v. Lumberman's Mining Co., 93 Mich. 491, 53 N.W. 625, 24 L.R.A. 357; Oakland Motor Car Co. v. Indiana Automobile Co., 7 Cir., 201 F. 499; Royal Bank of Canada v. Williams, 220 App.Div. 603, 222 N.Y.S. 425; Fuchs v. Standard Thermometer Company, supra.

The alleged modification of the Sales Agreement even if legally made is not binding and enforceable, so far as the Sales Agreement remains executory. Miami Coca-Cola Bottling Co. v. Orange Crush Co., 5 Cir., 296 F. 693, 694; E. I. Du Pont de Nemours Company v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 89 A. L.R. 238.

As to the fourth cause of action:

In that cause of action it is alleged that at or about the time of the making of the Sales Agreement "and in consideration thereof" the defendant represented, promised and agreed that as soon as it became available defendant would allocate to plaintiff a more profitable territory than the territory in the Borough of Brooklyn, City of New York, which plaintiff alleges the defendant "had allocated to the plaintiff temporarily"; that to defendant's actual knowledge, the plaintiff relied on its representations and devoted its energies and resources to building up defendant's business and good will, and that a more profitable territory became available in the Borough of Queens and defendant failed and refused to allocate it to plaintiff, to plaintiff's damage in the sum of fifty thousand dollars ($50,000).

What I have said as to the alleged modification of the third cause of action, as to its being oral and not made by one of the designated officers of defendant, applies with the same force here, and need not be repeated.

Not only was no territory assigned to the plaintiff's assignor by the said Sales

924

Agreement, but by Article 1 thereof, the defendant named therein as the Company agreed to sell to plaintiff's assignor named therein as the Dealer the Company's Products "subject to the right reserved to Company to sell to other Dealers and direct to retail purchasers in any part of the United States without obligations for any commission to Dealer on any such sale".

The alleged agreement according to the Bill of Particulars was oral, and if an enlargement or modification of the Sales Agreement, was not made by officers of the defendant enumerated in the Sales Agreement by whose actions only it agreed to be bound and what I have said on this subject with reference to the third cause of action is equally applicable here, and need not be repeated.

Plaintiff cites Erskine v. Chevrolet Motors Co. 185 N.C. 479, 117 S.E. 706, 32 A.L.R. 196, but the facts in that case clearly distinguish it from the case at bar.

Even if it be held that the alleged oral agreement in question was legally made, the terms of the alleged agreement "a more profitable territory" will be allocated when one became available, and "as soon as a better territory became available," it would be allocated to plaintiff, are too indefinite, vague and uncertain to constitute an enforceable contract. Jordan v. Buick Motor Company, 7 Cir., 75 F.2d 447; Royal Bank of Canada v. Williams, 220 App.Div. 603, 222 N.Y.S. 425; Cummer v. Butts, 40 Mich. 322, 29 Am.Rep. 530.

As the alleged fourth cause of action contains no allegation of any modification of the termination clause, the right to cancel at will remaining, the alleged modification contained in the fourth cause of action would only be, at most, a promise to enter into an agreement and would not support an action for damages. Ford Motor Co. v. Kirkmyer Motor Co., Inc., supra.

As to the fifth cause of action:

It is alleged in that cause of action, that upon the termination of the Sales Agreement, the defendant had the option to repurchase from plaintiff whatever of its products were in plaintiff's possession, and that subsequent to the cancellation and repudiation of the Sales Agreement, the defendant exercised its option, and agreed to repurchase all of the defendant's products in plaintiff's possession, and that thereafter it failed and refused to repurchase from plaintiff such defendant's parts, to plaintiff's damage in the sum of Twenty-five thousand dollars ($25,000). It is alleged in the Bill of Particulars that defendant exercised the option to repurchase in September or October, 1937, and "the said option was exercised orally on the telephone by Charles H. O'Donohue on behalf of the defendant in a conversation with Charles J. Burke, plaintiff's president", and that "there remained in plaintiff's possession at the time of cancellation of plaintiff's dealership contract, twenty-seven new Ford automobiles of the value of $15,594; various large parts such as fenders, wheels, motors, axles, frames, mufflers, etc., of a value of $489.97; and various small parts and bins of a value of $2,710.03."

Defendant contends that the exercise of the option, if it occurred, constituted a new contract to repurchase goods which falls within the provisions of the Statute of Frauds, Personal Property Law N.Y., Consol.Laws, c. 41, § 85, and cites Blanchard v. Trim, 38 N.Y. 225.

That case, however, is not in point, as the Court therein held that when property has been sold and delivered, and thereafter a subsequent agreement is made between the parties whereby the vendor agrees to buy back the property, the transaction is a new contract for resale and must be in writing, or accompanied by a delivery to take it out of the Statute of Frauds; whereas in the case at bar, there was no subsequent agreement, but simply the carrying out of the Sales Agreement which gave defendant that option.

The original Sales Agreement was in writing and that was sufficient to take it out of the Statute of Frauds.

The exercise of the option was not a new agreement, but was under the original Sales Agreement, which was a sufficient memorandum in writing to take it out of the Statute of Frauds.

The following cases cited on behalf of defendant: Frank Pelcyger v. Goldbrown Building Corporation, 236 App.Div. 817, 259 N.Y.S. 982; Yonkers National Bank & Trust Company v. Edward Roth et al., 247 App.Div. 730, 285 N.Y.S. 264; Esperanza Realty Corporation v. Loft, Inc., 132 Misc. 460, 230 N.Y.S. 380; Goodman & Suss, Inc., v. Wallack, N.Y., 195 N.Y.S. 328, do not seem to me to be in point.

While Johnston v. Trask et al., 116 N.Y. 136, 22 N.E. 377, 5 L.R.A. 630, 15

Am.St.Rep. 394; Fitzpatrick v. Woodruff, 96 N.Y. 561; Miller v. Associated Gas & Electric Co., 243 App.Div. 267, 277 N.Y.S. 237, cited on behalf of the plaintiff, are not directly in point, it does seem to me that, if as is held in those cases, an oral contract of sale, delivery being made with an agreement to take them back from, and to repay the purchase price is not void under the Statute of Frauds, then the option given to repurchase in the written Sales Agreement made for a valuable consideration in the case at bar is not void under the Statute of Frauds.

 The defendant is not entitled to Summary Judgment as to the fifth cause of action.

Motion granted as to the second, third and fourth causes of action, and denied as to the fifth cause of action.

Settle Judgment on notice.

Submit proposed findings of fact and conclusions of law, in accordance with this opinion, for the assistance of the Court, as provided by the Federal Rules of Civil Procedure, and the Civil Rules of this Court.