Order, Supreme Court, New York County (Milton A. Tingling, J.), entered April 26, 2012, which, upon plaintiffs and defendant H&H Builders’ motions for summary judgment, declared that defendant Arch Insurance Company has a duty to defend and indemnify H&H and plaintiff, unanimously reversed, on the law, with costs, the motions denied, and the declaration vacated.
*404 Plaintiff, 206-208 Main Street Associates, Inc. doing business as 8930 Sutphin Blvd., LLC (Sutphin), owned the property at 206-208 Main Street in Queens, New York. Sutphin hired defendant H&H Builders, Inc. (H&H) to act as construction manager on a project to construct a three-story office and retail building on the property, with an underground parking garage. H&H agreed to procure a commercial general insurance policy and to name Sutphin as an additional insured. H&H procured such a policy from defendant Arch Specialty Insurance Company (Arch). The policy contained an “Earth Movement or Subsidence Exclusion Endorsement,” which specified that the policy would not apply to property damage or bodily injury claims arising out of subsidence, falling away, caving in, or other movement of earth.
On August 30, 2007, as excavation was ongoing, the foundation of an adjacent building began to crack, and it eventually collapsed. A furniture store and dentist’s office were located in the neighboring building. Surrounding buildings also allegedly sustained damage. Through its insurance agent, H&H notified Arch of the incident within several days of its occurrence. H&H informed its agent that the claim was based on the collapse of a neighboring building, which another contractor had undertaken to underpin. In a letter dated September 14, 2007, Arch acknowledged receipt of the claim and advised H&H that it would review the information provided to determine “what rights or coverage, if any, you may be entitled to pursuant to the terms of the above referenced policy.” Arch informed H&H that it reserved its rights to assert “any and all defenses to coverage, including those that may be developed or discovered in the course of our further coverage investigation.”
On October 10, 2007, H&H’s agent forwarded to Arch a letter from attorneys for an insurance company that insured another contractor on the project. The letter described the incident as involving “the collapse or partial collapse of several structures.” On October 30, 2008, Sutphin’s insurance carrier wrote to Arch to notify it of the claim, and stated that “[i]t is being alleged that the collapse and damages to the buildings . . . were the result of inadequate shoring.”
H&H was named in at least four actions that arose out of the incident, one of which was commenced by Sutphin in October 2007. Arch retained a law firm to defend H&H in each of the actions. In the Sutphin lawsuit, the verified bill of particulars alleged that the accident was caused by, inter alia, “excavation work, underpinning [and] soil testing . . . [that was] negligent.”
By letter dated January 6, 2010, Arch first informed H&H *405 that the incident might fall within the earth movement exclusion in the policy. Arch reserved its right to disclaim coverage with respect to the lawsuits based on the cited exclusion, but confirmed that it would continue to provide H&H with a defense. Arch further advised H&H that H&H had the right to reject Arch’s defense and retain its own counsel. Arch restated its reservation of rights in a letter dated March 29, 2010.
Sutphin commenced this declaratory judgment action against Arch and H&H seeking a declaration of its entitlement to coverage in the underlying lawsuits as an additional insured under the Arch policy. H&H asserted cross claims against Arch claiming that it too was covered under the policy. Sutphin moved for summary judgment on its claim, on the ground that the earth movement exclusion did not apply to the incident. It further contended that, even if the reservation of rights were otherwise proper, Arch was equitably estopped from refusing to cover the various claims. The equitable estoppel theory was based on the fact that Arch had “controlled the defense” of the underlying action up until it issued its reservation of rights. In support of its motion, Sutphin submitted an affirmation by its counsel in the underlying actions. The affirmation stated: “With respect to the prejudicial effect that the delay in disclaiming indemnification coverage for H&H has caused Plaintiff, nothing can be more clearly stated. Defendant H&H was hired as the construction manager for the work performed for Plaintiff and was in charge of supervising the underpinning work. As such, the blame for the damages incurred, which is approximately $9,000,000.00, falls squarely on it. Arch’s deliberate delay in advising whether it will be indemnifying H&H for this los[s] greatly affects the ability of the parties to resolve this case amicably. For example, all of the parties, including counsel for Defendant H&H, Glenn Fuerth of Wilson Elser Moskowitz Edelman & Dicker LLP, signed and agreed to mediate this case on November 16, 2010. (See Mediation Agreement attached hereto as Exhibit ‘F’) However, just days before the scheduled mediation in late January 2011 Defendant H&H backed out and refused to participate. Since Defendant H&H is the main defendant in the underlying action, the mediation could not proceed and the case remains unresolved to this day. Additionally, this behavior is incongruous with Defendant Arch’s assertion that it never disclaimed coverage.”
H&H “cross-moved”* against Arch for summary judgment. It submitted an attorney affirmation that simply adopted the argu *406 ments made by Sutphin. In opposition to both motions, Arch argued, inter alia, that it was not yet obligated to issue a disclaimer at the time the action was commenced and that, in any event, Sutphin and H&H made an insufficient showing of prejudice, since prejudice could not be proven based on the mere fact that Arch controlled the defense. The motion court granted the motions. It did not reach the question whether the exclusion applied. Rather, it held that, “after two years of assuming a defense,” Arch was equitably estopped from disclaiming coverage.
We find that Arch failed to offer a reasonable excuse for its late disclaimer based on the earth movement exclusion, because sufficient facts were available to it well before it issued the disclaimer. However, we still must determine whether equitable estoppel applies. The Court of Appeals has long recognized that an insurer can be equitably estopped from issuing a disclaimer if at the time it disclaims it has controlled the defense of its insured (see Gordon, Inc. v Massachusetts Bonding & Ins. Co., 229 NY 424 [1920]). Nevertheless, the Court of Appeals has only found estoppel in cases where, by the time the insurer attempted to avoid liability under the policy, the underlying litigation against the insured had reached a point where the course of the litigation had been fully charted. For example, in Gerka v Fidelity & Cas. Co. (251 NY 51, 57 [1929]), the Court found that the insured raised an issue of fact as to estoppel where the insurer, having discovered facts supporting a possible disclaimer, “continued with the defense of the action, paid the witness fees, conducted the trial, appealed to the Appellate Division, and offered to pay the plaintiff a sum of money to settle the action.” In William M. Moore Constr. Co. v United States Fid. & Guar. Co. (293 NY 119 [1944]), the Court, in finding that the insurer was estopped from disclaiming after the trial had concluded, favorably quoted Kearns Coal Corp. v United States Fid. & Guar. Co. (118 F2d 33, 36 [2d Cir 1941]), which stated: “It is true that, where the insurer has retained control of the insured’s defense to final judgment or to a settlement, many authorities hold that prejudice is presumed or that the assumption of control is a waiver of rights or an election. While there are cases the other way, the New York decisions seem to tend that way without precise statement of the rule” (citations omitted and emphasis added).
Both H&H and Sutphin rely on Albert J. Schiff Assoc. v Flack (51 NY2d 692 [1980]) in support of their argument that control of an insured’s defense for any substantial length of time is inherently prejudicial. However, in that case, equitable estoppel *407 was not at issue, and the Court’s discussion of the doctrine was dicta. Further, the Schiff Court cited to Gerka (251 NY at 51), in which, again, the insurer controlled the defense through trial. Significantly, the Schiff Court also relied on O’Dowd v American Sur. Co. of N.Y. (3 NY2d 347 [1957]). In O’Dowd, the Court held that “[s]ince the insurer’s disclaimer of liability under the policy was first made nearly two years before the trial and again very definitely fully five months before the trial, and since the insured was given a full opportunity to join in the defense of the action, it may not be said as a matter of law that the insurer should be estopped from denying coverage of the policy, in the absence of a showing that the delay in notification prejudiced the rights of the insured” (3 NY2d at 355).
This Court’s discussion of equitable estoppel in Federated Dept. Stores, Inc. v Twin City Fire Ins. Co. (28 AD3d 32 [1st Dept 2006]) is consistent with the Court of Appeals cases cited above, insofar as this Court stressed that equitable estoppel will not be found unless “the insurer’s control of the defense is such that the character and strategy of the lawsuit can no longer be altered” (28 AD3d at 39). There is no indication in Federated that when the insurer disclaimed, the underlying litigation was close to trial. By contrast, in United States Fid. & Guar. Co. v New York, Susquehanna & W. Ry. Corp. (275 AD2d 977 [4th Dept 2000]), on which this Court relied in Federated, the carrier, which had assumed the defense of its insured, never disclaimed until six days before trial and on the eve of a court-ordered settlement conference at which a favorable offer to settle the case was tendered. The insured agreed to have the carrier pay the amount that was agreed upon at the settlement conference, but first had to agree that it would then litigate the coverage issue and, if it lost, reimburse the settlement amount and all of the defense costs. The court found that under these circumstances the insured was prejudiced.
When Arch issued its reservation of rights based on the earth movement exclusion, the underlying litigation was, by Sutphin’s own admission, still in its “early phase.” Accordingly, Sutphin’s and H&H’s submissions do not establish that they were prejudiced as a matter of law (see O’Dowd, 3 NY2d at 355). In several cases cited by Sutphin and H&H (Daimler Chrysler Ins. Co. v Zurich Ins. Co., 72 AD3d 730 [2d Dept 2010]; Brooklyn Hosp. Ctr. v Centennial Ins. Co., 258 AD2d 491 [2d Dept 1999], lv denied 93 NY2d 814 [1999]; Hartford Ins. Group v Mello, 81 AD2d 577 [2d Dept 1981]), equitable estoppel was found to apply because the litigation in which the insurer was defending its insured was already on the trial calendar at the time the disclaimer was issued.
*408 This is not to say that Sutphin and H&H could not establish prejudice by some factor other than the posture of the litigation at the time Arch issued its reservation of rights. For example, in another case cited by Sutphin and H&H in which a finding of equitable estoppel was made, it is apparent from the briefs that the defendant insurer, to which the plaintiff insurer was trying to tender back the defense of their mutual insured, had argued that the plaintiff insurer had taken advantage of information defense counsel had communicated to it to form the basis for the eventual disclaimer (Fireman’s Fund Ins. Co. v Zurich Am. Ins. Co., 37 AD3d 521 [2d Dept 2007]). Sutphin and H&H failed to present any such evidence to shift their burden to Arch on their motions for summary judgment. All they attempted to demonstrate was that H&H was perceived in the litigation as the party most to blame for the collapse of the neighboring building. However, they failed to even suggest that Arch somehow manipulated the defense to create that perception.
Because Sutphin’s and H&H’s submissions were insufficient to demonstrate that they were prejudiced by Arch’s late reservation of rights as a matter of law, they failed to shift their burdens on the motions. Whether Arch should be equitably estopped from disclaiming coverage (if that is what it ultimately decides to do) must therefore be left to the trier of fact. Concur—Mazzarelli, J.P., Renwick, Richter, Gische and Clark, JJ.

 Arch contends that this was procedurally improper, since H&H did not cross-move against a party that itself had made a motion.