CONSOLE MASTER SPEAKER CORPORATION, a corporation of the State of Delaware, *vs.* MUSKEGON WOOD PRODUCTS CORPORATION, a corporation of the State of Michigan.

(*July* 15, 1927.)

PENNEWILL, C. J., RICE and RODNEY, J. J., sitting.

*Clarence A. Southerland* for plaintiff.

*James I. Boyce* for defendant.

Superior Court for New Castle County, May Term, 1927. No. 81, January Term, 1927.

PENNEWILL, C. J., delivering the opinion of the Court:

The agreement made between the plaintiff and defendant is in the following language:

"Console Master Speaker Corporation,
"15 East 40th Street, New York City.
    "June 1, 1926.

"Muskegon Wood Products Co., Muskegon, Mich.—Gentlemen: Supplementing our negotiations with your vice president, Mr. M. F. Shapiro, we are placing with you herewith our *order* for

"5,000 radio cabinets with built in horn and tone arm, substantially the same as the freshman console model with the following alterations:

"The grille to be on the right hand side with silk backing.

"Also provision to be made to accommodate a cone speaker behind the grille.

"Bottom compartment to have two doors with knobs, the back to be closed from top to bottom.

"These cabinets are to be placed individually in three ply veneer boxes to withstand shipment without breakage or scratching.

"Price *not to exceed* $14.50.

"Also 2,000 radio cabinets substantially the same as the mastercraft model 121, with built in horn and tone-arm and provision to be made to accommodate a cone speaker behind the grille, packed individually in two ply veneer boxes to withstand transportation without damage.

"Price *not to exceed* $22.50.

"These cabinets to be made of mahogany or walnut veneer front and top, in two tone duco-lacquer finish. You guarantee workmanship and finish to be first class in every respect.

"*This order is subject to approval on our part upon delivery of samples.* These samples are to be in our hands not later than June 21st, preferably sooner.

"Delivery of these radio cabinets to be made on the basis of 75 cabinets per day, 50 of the freshman type and 25 of the mastercraft type, beginning with August 1st.

"You agree to make drop shipments for us. That is, to ship direct to our customers in various parts of the country, f. o. b. factory, according to our instructions.

"You further agree not to manufacture or sell the same identical style of cabinets to any other person or firm.

"It is understood between us that in case of your failure to deliver that you agree to pay and we agree to accept the sum of $2.00 as liquidated damages for any cabinet not delivered under this order.

"These cabinets are payable on the basis of the above prices 2 per cent. 30 days or net 60 days against our trade acceptances, or assignment of our outstanding accounts or guarantee of a note of C. Crenemeyer Company, as you may elect within the next ten days.

"We are also to have the privilege of placing with you upon the same terms and conditions and prices a quantity of work, equivalent to the above order on or about October 15th.

"Very truly yours,
"FHH:MM                    Console Master Speaker Co.
    "Accepted: Muskegon Wood Products Co.,
                                "M. F. Shapiro, V. P."

By its demurrer the defendant admits that it did not deliver any samples of the proposed cabinets, but contends that the agreement was not legally enforceable because the entire order was subject to the plaintiff's approval upon the delivery of samples.

The question raised by the demurrer is whether the agreement that was made and set out in each count of the plaintiff's declaration, constituted an enforceable contract.

There can be no doubt about the soundness of the principle of law, invoked by the defendant, that where the promisor·retains an unlimited right to decide later the nature or extent of its performance, the promise is too indefinite for legal enforcement; that such unlimited choice in effect destroys the promise and makes it illusory. For the same reason, if one party to an agreement reserves an unqualified right to cancel the bargain, no legal rights can arise from it while it remains executory. *Williston on Contracts*, § 43.

Tested by the general law of contracts, as stated by Williston and other text writers, the defendant insists that the agreement in question was not a contract of sale, but an offer to sell or option to purchase; that there was no obligation on the part of the defendant to purchase the cabinets until samples had been delivered and approved, and there was, therefore, an absence of that mutuality of obligation that is essential to a legally binding contract.

The agreement was made in the State of New York, and the plaintiff claims its validity is governed by the laws of that State. This is not denied. The plaintiff contends that under the laws of New York such an agreement as the one sued on in this case means that the defendant was to furnish samples that would be reasonably satisfactory to the plaintiff; that the plaintiff had no right to arbitrarily disapprove them, and that the defendant's duty was only that of furnishing samples that would satisfy a reasonable man.

It is conceded that it might be different if the subject matter of the contract involved "personal taste," a distinction recognized by the courts of New York.

The New York rule has been criticised particularly by Willis-

ton, because of the difficulty in many cases of determining whether personal taste was involved.

It is not seriously claimed, we think, that the contract in this case, which was an order for a large number of radio cabinets involved the personal taste of the plaintiff.

We are not convinced that the law of the State of New York, on the subject mentioned, is essentially different from the general law, except where the subject matter of the contract involves personal taste. Such distinction may not be recognized by the general law.

The real question before this Court is, what does the agreement mean by the provision that "this order is subject to approval on our part on delivery of samples?" Does it mean that the plaintiff had the right to refuse approval of the order without any cause or reason other than its unwillingness to buy; that it might arbitrarily refuse to approve? Or does it mean that the plaintiff could refuse to approve only in the event that the samples were not in conformity with the specifications set out in the order?

It will be observed that there were many specifications respecting the cabinets, contained in the agreement. They were to be substantially the same as certain models referred to, but with many alterations or differences, and they were to be made of certain prescribed materials, etc.

Naturally the plaintiff wanted to know that the cabinets when delivered would strictly conform to the specified requirements, and because of that fact desired samples to be furnished in advance of the delivery of the cabinets. It is hardly possible to believe the parties to the agreement meant that the plaintiff might refuse to approve the order even though the samples should conform in every particular to the specifications. This is not a case of sending goods or making samples on approval, in which there is nothing more than an offer by one party which may be refused by the other. In this case the plaintiff placed an order with the defendant for 7,000 radio cabinets subject to approval after samples were furnished. The maximum price was agreed upon as well as the times of delivery.

Manifestly, the only condition intended, or right reserved, was that the cabinets should be up to the specifications named, and that would be determined by the samples. It was not a mere offer to sell, or an option given to the buyer to purchase, if he wished, later. An option contract is one in which there is no obligation on the part of the vendee to purchase at all. We think that under the agreement before the Court, if the defendant had delivered to the plaintiff samples as required, and they had conformed in every respect to the requirements contained in the order, the plaintiff would have been bound to accept them under the law of the State of New York or under the law of this State. The promisor did not retain an unlimited right to decide later the nature or extent of his performance, or reserve an unqualified right to cancel the bargain, as was the case in the cases cited by the defendant.

The agreement provided that the cabinets should be made for the plaintiff on the basis of 75 per day, beginning August 1, samples to be delivered not later than June 21.

With such a large order it is reasonable to believe that it was the intention of both parties that preparation would be made for filling it, and the manufacture begin before June 21, the seller taking the risk of furnishing samples that would comply with the specifications.

It is inconceivable that the plaintiff had, under the law, an absolute and arbitrary right to disapprove the order. The provision respecting the furnishing of samples, while a part of the agreement, and meant for the protection of the plaintiff, was incidental to the main purpose of the contract. If such provision gave the buyer an unlimited right to determine later whether there should be any binding contract, it is impossible to see why there should have been any requirements for deliveries.

[4] In view of the real purpose of the contract, when considered as a whole, and the well settled principle of law, "that a contract will not be construed so as to destroy the same, where there is another legitimate construction which will uphold it," we have no difficulty in holding that the agreement in question is legally enforceable.

"Where a particular word or words, or the contract as a whole, is susceptible of two meanings, one of which will uphold the contract or render it valid, and the other of which will destroy it or render it invalid, the former will be adopted so as to uphold the contract. So a contract should be construed in favor of mutuality and certainty." 13 *C. J.* 539.

The following cases are somewhat analogous to the one at bar, and in principle sustain the position of the plaintiff: *LaGrange Grocery Co. v. Lamborn & Co. (C. C. A.)*, 283 *F.* 869; *Slater v. Savannah Sugar Refining Corp.*, 28 *Ga. App.* 280, 110 *S. E.* 759.

In the last-mentioned case the Court, in speaking of the provision respecting "withdrawals by buyers," said:

"This provision must, of course, be construed in harmony with the seller's main obligation to sell, and will not be construed as nullifying that obligation, unless its clear and unambiguous terms so demand. * * * Also, while the 'withdrawals' are subject to the seller's credit department, the seller's right in this respect must be exercised with due regard to the other provisions of the contract, including the general provision whereby the seller is obligated to sell," etc.

See, also, *A. B. Small Co. v. Lamborn & Co.*, 267 *U. S.* 248, 45 *S. Ct.* 300, 69 *L. Ed.* 597; *Williston on Sales* (2d Ed.) *vol.* 1, § 191.

The demurrer is, therefore, overruled.