## SUPERIOR TUBE CO. v. DELAWARE AIRCRAFT INDUSTRIES, Inc.

### Civil Action No. 415.

District Court, D. Delaware.

Nov. 9, 1944.

Caleb R. Layton, 3d (of Hastings, Stockly and Layton), of Wilmington, Del., for plaintiff.

Ivan Culbertson, of Wilmington, Del., for defendant.

LEAHY, District Judge.

Plaintiff seeks damages for failure of defendant to machine and polish a quantity of beryllium copper billets furnished by plaintiff to defendant in accordance with specifications contained in a certain written contract. Defendant's answer alleges the billets furnished by plaintiff were not comparable in condition, gauge, size and shape to the samples originally furnished; hence, defendant was unable to perform its work exactly in accordance with the contract specifications. Defendant has filed what it denominates an "additional counterclaim" which reads: "The defendant undertook the machining of the said billets referred to in plaintiff's Exhibit "A" upon the promise and assurance of the defendant that if the machining should be done properly, the plaintiff would furnish to the defendant a further large number of beryllium copper billets for machining at the price theretofore agreed upon and in reliance upon the promise of this additional and further work the defendant accepted the initial order for machining billets and incurred substantial expense and cost premised upon the obtaining of the additional business. That the failure of the machined billets to qualify to the specifications furnished was due entirely to the non-conformation of the billets to the samples furnished and the refusal of the plaintiff to give to the defendant the further and additional business promised, on the alleged ground that the machining was improperly done, was due wholly and entirely to the plaintiff's action in furnishing billets of the condition, gauge, size and nature of those furnished. The defendant had a right to the additional business, to absorb the cost of preparation for the original machining job and as well to the profit which would flow therefrom. By reason of the unwarranted act of the plaintiff in condemning the machined billets and refusing the additional and further business, the defendant has been greatly damaged in the amount of Eight Thousand ($8,000.00) Dollars. And the defendant demands judgment against the plaintiff in the further amount of Eight Thousand ($8,000.00) Dollars." Plaintiff has filed a motion to dismiss this pleading on the grounds that (a) the allegations of a contract are not alleged with sufficient definiteness and (b) the alleged promise of a further large number of beryllium copper billets for machining amounts to nothing more than an illusory promise.

Plaintiff's proper remedy in the instant case is to utilize one or more of the advance discovery procedures which are

available under the new Rules.[1] The reason for this conclusion will become apparent from a consideration of the contract law which the counterclaim and motion raises. Since in this case jurisdiction is based on diversity and requisite amount, the matter of contract law must be determined by reference to the law of the state of Delaware.[2] The applicable Delaware law is inconclusive, but the case of Console Master Speaker Corporation v. Muskegon Wood Products Corporation, 3 W.W.Harr. 390, 33 Del. 390, 138 A. 598, 599,[3] indicates the general law in interpreting the present matter. But the application of the general law in turn is difficult because there are matters alleged in the counterclaim which indicate that the agreement lacks sufficient definiteness to be a contract, while there are other allegations which would indicate an enforceable contract between the parties. The main difficulty with the alleged agreement found in the counterclaim is that it is alleged that if the work were properly done "the plaintiff would furnish to the defendant a further large number of beryllium copper billets for machining at the price theretofore agreed upon." This part of the agreement is indefinite because plaintiff has the subjective determination of whether the previous work was satisfactory. Moreover, it is difficult to apply any standard to determine what is meant by "a further large number of beryllium copper billets." Many comparable provisions have been held too vague. For a collection of cases, see Williston on Contracts, Sec. 42.[4]

There are, on the other hand, certain considerations which would indicate that the agreement is sufficiently definite

---

[1] See Best Foods, Inc., et al. v. General Mills, Inc., D.C.Del., 3 F.R.D. 275.

[2] There is no specific allegation in either the complaint or answer which indicates where the contract was to be performed or where the contract was executed. There is, however, an allegation in the counterclaim that defendant took samples of the beryllium copper billets to an "independently expert machine shop" in Wilmington. I do not think it important to decide whether this is a sufficient inference that the contract was to be performed in Delaware for, absent any contrary allegation, I shall assume that the defendant, being a Delaware corporation, performed its contract in Delaware, and that therefore Delaware law applies.

[3] In this case the court from its citation of Williston on Contracts indicates that the law of Delaware is the same as the general law. The court, in part, said:

"There can be no doubt about the soundness of the principle of law, invoked by the defendant, that where the promisor retains an unlimited right to decide later the nature or extent of its performance, the promise is too indefinite for legal enforcement; that such unlimited choice in effect destroys the promiso and makes it illusory. For the same reason, if one party to an agreement reserves an unqualified right to cancel the bargain, no legal rights can arise from it while it remains executory. Williston on Contracts § 43.

"Tested by the general law of contracts, as stated by Williston and other text writers, the defendant insists that the agreement in question was not a contract of sale, but an offer to sell or option to purchase; that there was no obligation on the part of the defendant to purchase the cabinets until samples had been delivered and approved, and there was, therefore, an absence of that mutuality of obligation that is essential to a legally binding contract."

Although there is no precise Delaware decisional law on this point, I conclude Delaware would, under such circumstances, examine the general authority on this point and accept that authority as the law of Delaware. Stentor Electric Mfg. Co. v. Klaxon Co., 3 Cir., 125 F.2d 820; Moyer v. Van-Dye-Way Corp., 3 Cir., 126 F.2d 339; Geller v. Transamerica Corp., D.C. Del., 53 F.Supp. 625.

[4] Williston in the above section states, in part, as follows: "Illustrations of such indefiniteness are as follows: A promise to give the buyer of a horse in a certain contingency 'the buying of another horse' [Guthing v. Lynn, 2 B. & Ad. 232]; a promise to mine and deliver 'all the outcrop' on certain lands [Sloss-Sheffield Steel & Iron Co. v. Payne, 186 Ala. 341, 64 So. 617]; a reservation of 'a necessary line for making a railway' [Pearce v. Watts, L.R. 20 Eq. 492]; a promise to sell as many cross-ties as it is possible to accumulate at a certain point for 12 months [American Tie & Timber Co. v. Naylor Lumber Co., 190 Ala. 319, 67 So. 246], were held not sufficiently certain." Another interesting case is Metro-Goldwyn-Mayer Distributing Corp. v. Home Theatre Co., 7 Cir., 71 F.2d 225. There a contract obligating distributor to furnish "available pictures" was held void where distributor could determine when and what pictures were available. See also "A Promise Dependent Upon a Subjective Contingency as a Cause of Action and as a Consideration," 26 Col.Law Rev. 724.

to be enforced. That one party may determine whether the work is satisfactory is not in itself usually regarded as making a contract void for lack of definiteness for it may be possible to establish by evidence whether there has been a reasonable compliance with the requirements of the agreement. Williston on Contracts, Secs. 42, 43, and cases cited there. Cf. Console Master Speaker Corporation v. Muskegon Wood Products Corporation, supra. An additional consideration tending to indicate that the agreement should be enforced is that the counterclaim alleges, at least impliedly, that the original price agreed upon was based in part upon the assurance of additional work. In other words, the price was determined on the theory of more work than was actually given to defendant.

█ It is apparent, then, that an interpretation of this alleged agreement involves conflicting considerations caused by the ambiguity of the language describing the agreement. Because of this fact, I have concluded to deny plaintiff's motion because I think it was intended in such situations that a party should utilize the various discovery procedures authorized by the new Rules, 28 U.S.C.A. following section 723c, to ascertain precisely what an adversary's position ultimately is. If, after plaintiff has utilized the various methods open to it and still is of the belief that the agreement is indefinite as a matter of substance, it may renew its motion to dismiss or ask for summary judgment.