**KANE et al. v. CHRYSLER CORPORATION.**

**Civ. No. 996.**

United States District Court
D. Delaware.

Sept. 20, 1948.

Stewart Lynch, of Wilmington, Del., for plaintiffs.

Robert H. Richards, Jr., and Richards, Layton & Finger, all of Wilmington, Del., for defendant.

RODNEY, District Judge.

This is a motion by the defendant for summary judgment. The action is brought by James J. Kane, William Kane, citizens of New York, and Case-Kane, Inc., a corporation of the State of New York, against Chrysler Corporation, a corporation of the State of Delaware.

The complaint sets out three causes of action:

(1) The first cause of action is based upon a written contract (called a Direct Dealer Agreement) between the defendant and the corporate plaintiff. Dated May 20, 1941, this agreement purports to constitute Case-Kane Co., one of the plaintiffs, as a direct dealer with the exclusive right, inter alia, to purchase Dodge motor vehicles for resale within five named townships in Orange County, New York. The complaint alleges that the defendant, in violation of the contract, appointed one George D. Thayer as the agent of the defendant to sell the products of the defendant within the mentioned territory.

(2) The second cause of action seems to be based upon the same written contract but alleges that while it was in force the individual plaintiffs entered the Armed Forces of the United States, and while so serving the defendant cancelled the contract, and the cause of action seems to be based upon the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A.Appendix, § 501 et seq.

(3) The third cause of action reiterates the allegations of the former causes but, instead of being based upon the Soldiers' and Sailors' Relief Act of 1940, is based upon the alleged actions and representations of agents of the defendant after the individual plaintiffs returned from service with the Armed Forces.

The motion for summary judgment, of course, must be determined after consideration of the pleadings and affidavits filed in the cause. With the motion for summary judgment the defendant filed an affidavit of F. H. Akers, Vice-President of Dodge Division of Chrysler Corporation. This affidavit recognizes the existence of the contract between the corporate plaintiff and the defendant dated May 20, 1941, but states that the agreement was terminated by mutual termination agreement dated July 30, 1945 executed on behalf of the plaintiff by Martha K. Kane, its President, and on behalf of the defendant by the deponent, F. H. Akers. The affidavit states the written contract embodied the entire relationship between the parties and after the mutual termination agreement no further contractual relationship existed.

The plaintiffs have filed five affidavits. Without detailed consideration of the affidavits they allege that the mutual termination agreement was obtained by fraud and that at the time of execution of the supposed termination agreement Martha K. Kane was not President or any officer or stockholder of the plaintiff corporation and was without any authority to sign such agreement.

Questions of fact as to the validity of the mutual termination agreement hav-

ing been raised, then that agreement, as a mutual termination agreement, may not be considered on this motion for summary judgment. The defendant, while orally denying the allegations of fraud, concedes the effect of the question of fact thus raised.

The defendant contends that the notice of termination is unimportant because it insists that the contract in question, so far as it was executory, contained no obligations on either party which could be enforced by the other. The defendant contends that there was no obligation on Case-Kane Company to buy automobiles and no obligation on the defendant to sell such automobiles even if the plaintiff had ordered them, and that the relationship was such as to merely set out the terms in case such purchases and sales of automobiles were made. The defendant, adopting a term used in many cases, such as Brooks v. Sinclair Refining Co., 10 Cir., 1944, 139 F.2d 746, denominates the contract as ineffective and "illusory." The instant contract was drawn on forms and in the language of the corporate defendant and it is recited that "the terms of the agreement are the result of many years of experience and study by Dodge * * *", and thus the terms of the contract favorable to the defendant may well be the subject of special scrutiny.

A few thoughts may be directed to the contract. Clearly the parties intended to enter into some agreement for the sale and purchase of automobiles and parts. While no language appears as requiring the purchase or sale of any specific number of automobiles, yet certain facts are plain.

In paragraph 1 the "Direct Dealer [Case-Kane Co.] shall have the exclusive right to purchase from Dodge, Dodge motor vehicles for resale" in a specific territory of five townships in Orange County, New York.

Under the contract Dodge "endeavors to provide Direct Dealer with products of a quality to render good service to the user under fair and reasonable terms." The very purpose of the agreement is specifically stated to be to "facilitate Direct Dealer's purchases and resale of Dodge and Plymouth products" and that it is Dodge's "aim to provide Direct Dealer with good merchandise for sale."

The Dealer was specifically required to maintain "a suitable place of business * * * for the proper representation of Dodge and Plymouth products, including appropriate stocks of new motor vehicles, parts and accessories, salesroom, parts department and service station with appropriate organization and equipment"; "to actively promote and develop the sale of Dodge and Plymouth products and to appoint other dealers." The Dealer is required to submit weekly orders for new motor vehicles and these ordered vehicles are expressly stated to be "scheduled for production after Direct Dealer's order is received." It was stipulated that Dodge would not ship any motor vehicle to Direct Dealer except on Direct Dealer's order, but Direct Dealer was "expected to accept any motor vehicle ordered by him and scheduled for production."

With reference to the supply of parts the contract is somewhat more specific. Direct Dealer agreed not to sell for use on Dodge or Plymouth cars any parts not purchased from or approved by the defendant; the Dealer agreed to keep on hand a supply of current Dodge and Plymouth parts sufficient to supply adequately the requirements of the sales area allocated to the Direct Dealer. The language of the defendant requiring the Direct Dealer to maintain an adequate supply of parts on hand and the requirement that these parts must be purchased from the defendant would seem to create a reciprocal duty on the defendant to sell such parts to the Direct Dealer.

The provisions of the contract and the acts of the parties are consistent only with the existence of a contract imposing some reciprocal conditions and at least binding upon the parties to some extent. Clearly the Case-Kane Co. had an exclusive right to purchase Dodge motor vehicles for resale within the designated territory. Even though the defendant might not be required to furnish any particular number of motor vehicles to Case-Kane Co. (and as to this I express no opinion), yet while the agreement was in force the sale by the defendant to a third party of Dodge motor vehicles for resale within the designated

territory would seem to be contrary to the express terms of the agreement.[1] The very meticulous provisions for termination of the agreement imply there was some agreement to be terminated, for it is difficult to understand the detailed methods of terminating a contract which the parties knew did not exist and had no binding force.

Contracts such as here involved are neither pure sales contracts nor pure agency contracts. They have been developed to meet the distribution needs of manufactured products where such distribution cannot be had upon merit alone. In many cases the product or model is new and the sales must be encouraged by expensive show rooms, service stations and by intensive and extensive advertising and salesmanship. The services of the dealer call for a considerable investment with uncertain result. The manufacturer himself may not know the numbers to be manufactured or the exact cost. The parties often cannot be exact with reference to the quantity, amount or cost of the items covered by the contract. The contracts are entered into in good faith by both parties and utilized by business men and must be given a construction in accordance with the intent of the parties. Merely because the exact obligation of the parties may not be clearly stated is no reason to fail to see the obligation inherent in almost every line of the contract itself. In language approved by Justice Cardozo, in Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214, "A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed."

Some courts, in considering cases where there was no express promise to buy or sell or to buy or sell any specific amount or at any specific time, have described the contracts as lacking in "mutuality." The very term "mutuality" is, in itself, somewhat misleading. It would seem that what is meant is that for the promise there is no sufficient consideration —either by way of detriment or benefit. In order that a contract may be binding bi-laterally there must be a benefit or detriment applicable to each phase of alternative courses of conduct.[2] This consideration—benefit or detriment—need not be identical and, for the mere formation of the contract, there need be no exact mutuality of consideration.[3]

An agreement to buy an uncertain quantity coupled with the obligation not to buy elsewhere has been held not lacking in consideration because it constituted a detriment to the buyer sufficient to support the promise to sell.[4] The converse must be true and the creation of an exclusive right to purchase in a given territory whereby the seller suffers the detriment of being prohibited from selling to any one other than the dealer must constitute sufficient consideration to support the promise not to buy from any one other than the seller. In Imperial Ref. Co. v. Kanotex Ref. Co., 8 Cir., 1928, 29 F.2d 193, the defendant had bound itself to buy of the plaintiff and plaintiff had bound itself not to sell to others. This promise to restrict its freedom of the right to sell was a substantial consideration of the promise to buy.

In the present case we have both a promise of defendant not to sell its products for resale in the territory to any one other than the plaintiff and the express promise of the plaintiff not to buy and sell in the territory any motor vehicles of any make other than those of the defendant.

I am of the opinion that the right of a plaintiff to exclusively receive for resale within a designated territory such motor vehicles as might be furnished by a defendant and the express obligation and detriment of the dealer not to sell, within the territory, any motor vehicle of another make furnishes sufficient consideration for the contract unless, indeed the contract has no force or validity because

---

[1] See R. S. Stokvis & Sons v. Kearney & Trecker Corp., D.C.S.D.N.Y. 1944, 58 F.Supp. 260, 267.

[2] Restatement Contracts, Sec. 79.

[3] 1 Williston on Contracts (Rev. Ed.) Sec. 141; 12 Am.Jur. "Contracts" Sec. 13.

[4] Conley Camera Co. v. Multiscope & Film Co., 8 Cir., 1914, 216 F. 892; Bartlett Springs Co. v. Standard Box Co., 16 Cal.App. 671, 117 P. 934.

terminable at will or the option to terminate is unrestricted. As said in Jay Dreher Corp. v. Delco Appliance Corp., 2 Cir., 1937, 93 F.2d 275, 277, "Divorced from the cancellation clause * * * the agreement was therefore made up of mutual promises which limited the parties' freedom of action and it was a valid contract."

When, in connection with a contract of indefinite amount or uncertain deliveries an unrestricted right of cancellation is reserved to one or both parties, then the contract is properly held binding only insofar as it has been executed. An executory portion of the contract with no specific obligation of performance and a duration terminable at will by an unrestricted option to terminate lacks consideration and validity. These are the cases relied upon by the defendant: Motor Car Supply Co. v. General Household Utilities Co., 4 Cir., 1935, 80 F.2d 167;[5] Ford Motor Co. v. Kirkmyer Motor Co., 4 Cir., 1933, 65 F.2d 1001; Bushwick-Decatur Motors v. Ford Motor Co., D.C.E.D.N.Y.1940, 30 F.Supp. 917; Id., 2 Cir., 1940, 116 F.2d 675; Brooks v. Sinclair Refining Co., 10 Cir., 1944, 139 F.2d 746. See also Console Master Speaker Corp. v. Muskegon Wood P. Corp., 3 W.W. Harr. 390, 33 Del. 390, 138 A. 598.

Where, however, as here, the contract is implicit in its terms and the cancellation or rescission can only be effective at a future time after a definite period of notice, the detriment or consideration exists.[6]

In the present case there was the substantive right in Case-Kane Co. to exclusively receive for resale in the designated territory such motor vehicles as might be furnished by Chrysler Corporation. With this right was the express and correlative obligation of Case-Kane Co. not to sell within the territory any motor vehicles of another make. There is no unrestricted right of cancellation available to either party. Not only is the form of notice stipulated, viz., a written notice executed by designated persons but the exact period of notice for each party is meticulously set out, viz., written notice by the defendant of from 90 to 95 days or written notice by the Direct Dealer of from 15 to 20 days. This requirement of notice constitutes consideration.

The conclusion that a contract exists under the facts here present finds support in Bendix Home Appliances v. Radio Accessories Co., 8 Cir., 1942, 129 F.2d 177; Marrinan Medical Supply v. Ft. Dodge Serum Co., 8 Cir., 1931, 47 F.2d 458; Chevrolet Motor Co. v. Gladding, 4 Cir., 1930, 42 F.2d 440; Moon Motor Car Co. of New York v. Moon Motor Car Co., Inc., 2 Cir., 1928, 29 F.2d 3; Jay Dreher Corp. v. Delco Appliance Corp., 2 Cir., 1937, 93 F.2d 275, 277; Schnerb v. Caterpillar Tractor Co., 2 Cir., 1930, 43 F.2d 920; Mantell v. International Plastic Harmonica Corp., 141 N.J.Eq. 379, 55 A.2d 250; E. I. DuPont DeNemours & Co. v. Claiborne-Reno Co., 8 Cir., 1933, 64 F.2d 224, 89 A.L.R. 238.

In this case jurisdiction is based upon diversity of citizenship. The pertinent Delaware law, therefore, is controlling, including the Delaware rules governing Conflict of Laws.[7] Under the Delaware law, it seems that both the validity and construction of a contract is to be determined by the law of the place where the contract was made.[8]

The present contract was "finally executed at Detroit, Michigan" and expressly provides that it shall be "interpreted and construed according to the laws of the State of Michigan." A specially requested examination has disclosed no decisional

---

[5] In this case the agreement provided for 30 days' written notice of cancellation. Rights under the contract were terminated, however, upon the giving of the notice so that the termination, in effect, was at will.

[6] Studebaker Corp. of America v. Wilson, 3 Cir., 1918, 247 Fed. 403; Ellis v. Dodge Bros., 5 Cir., 1917, 246 Fed. 764; Thomas v. Anthony, 30 Cal.App. 217, 157 P. 823; Mutual Benefit Life Ins. Co. v. Ellis, 2 Cir., 1942, 125 F.2d 127, 131, 138 A.L.R. 1478; Restatement "Contracts" Sec. 573.

[7] Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477.

[8] Lams v. F. H. Smith Co., 6 W.W. Harr. 477, 36 Del. 477, 178 A. 651, 105 A.L.R. 646; Harris v. New York Life Ins. Co., 26 Del.Ch. ——, 33 A.2d 154.

law in Michigan pertinent to the present question.

A Delaware court, under such circumstances, would ascertain the law of Michigan. It is quite immaterial whether a Delaware court would look for guidance to its own law or to the general common law of contracts, for Delaware has no decisional law at variance with the latter. I must conclude, after consideration of all available data, that this court, like the courts of Delaware, should assume the Michigan law is not inconsistent with the principles herein set forth.

The defendant contends that because the Direct Dealer was compelled, after termination of the contract, to sell the cars on hand to Dodge at invoice price and Dodge was compelled to repurchase the same, no breach of the contract could occur. The defendant thus tries to make more closely applicable Motor Car Supply Co. v. General Household Utilities Co., supra. In that case, however, the agreement to buy and sell the goods on hand was expressly effective upon the *giving* of notice of termination. In the present case the agreement to buy and to sell is within 30 days *after the effective date of termination*. The defendant argues that the effective date of termination is the date of giving the notice and not at the expiration of such notice. The requirement of the length of notice differed depending upon which party gave the notice terminating the contract. Termination by Dodge required a notice of from 90 to 95 days, while termination by Direct Dealer required only 15 to 20 days. If the effective date of termination was the mere giving of the notice there could be no reason for the differing periods of time. Clearly the "effective date" of the notice is when such notice becomes operative, viz., after the passing of the time required for notice. Obviously the greater length of time required when termination was by Dodge was in order to give to Direct Dealer an opportunity of disposing of cars and parts at an increased price over that invoice price which had been paid for the same and with the selling advantage of an accredited dealer's organization, and this requirement of notice operated in favor of Direct Dealer in view of his investment.

The defendant contends that although the so-called Mutual Termination Agreement, as hereinbefore discussed, is not effectual on this motion for summary judgment as a mutual or bi-lateral termination, yet that same notice is operative under Section 9 of the contract as a unilateral notice of termination given by the defendant. The defendant contends that where a contract provides for termination upon a definite period of notice and no valid or legal notice is given, or an insufficient notice is given, the contract is terminated after the requisite period of notice has expired after the communication of the clear intent to terminate. For this many cases are cited, most of which may be found collected in the annotations in 35 A.L.R. 893 and 126 A.L.R. 1110. Many of the cases cited concern employment contracts. It is unnecessary to determine the precise application of these contracts or even of the general principle as applicable to contracts generally. A consideration of paragraph 9 of the contract and of the provisions of the termination notice when considered with the affidavits on the present motion for summary judgment prevents the consideration of the termination notice as an absolute unilateral termination under paragraph 9. The affidavits allege that the agents or representatives of the defendant expressly informed the plaintiffs that the termination agreement was known by the defendant to be ineffective and would not be relied upon as a termination notice and that, disregarding the notice, Case-Kane Co. would continue to be the Direct Dealer for the output of the defendant.

In view of this issue of fact the motion for summary judgment cannot be based upon this termination notice and must be denied as to the first cause of action.

The notice of termination is also inextricably interwoven with the third cause of action set out in the complaint. This third cause of action is based upon the alleged actions of the agents or representatives of the defendant after the alleged unilateral notice of termination had been

given. The affidavits clearly allege that the agents of the defendant stated that the termination notice should not be considered as such and that the plaintiffs should continue to be considered as the Direct Dealers for the defendant within the specified territory. The affidavits allege that with the knowledge and approval of the defendant's agents the plaintiffs purchased a new location for the express purpose of being able to provide for 350 cars of the defendant and engaged an architect to prepare plans for the building, which plans were shown to and approved by the agents of the defendant. The affidavits allege that the actions of the defendant's agents in treating with the plaintiffs as Direct Dealer and in contradiction of any reliance upon the notice of termination continued from September 1945 to July 1946.

The third cause of action may not now be drawn with precision. It appears, however, that the affidavits do disclose a set of facts so germane to the third cause of action set out in the complaint as to justify the allowance of an amendment to the complaint so that the claim, if it exists, may be clearly set out.

In 1946 Supplement to 3 Moore's Fed. Practice, P. 184, it is said, "Affidavits going beyond the complaint may be considered if facts appear in the affidavit which would justify an amendment." 3 Moore's Fed. Practice, 1947 Supp. p. 193; Rossiter v. Vogel et al., 2 Cir., 1943, 134 F.2d 908, 912; Downey v. Palmer, 2 Cir., 1940, 114 F.2d 116. See also Seaboard Terminals Corp. v. Standard Oil Co. of New Jersey, 2 Cir., 1939, 104 F.2d 659.

■ Because the affidavits set out a state of facts from which it may be possible to frame a valid complaint, the motion for summary judgment should not be granted. The matter is somewhat analogous to Erskine v. Chevrolet Motors Co., 185 N.C. 479, 117 S.E. 706, 32 A.L.R. 196, where the question arose in connection with a non-suit.

The motion for summary judgment as applicable to the third cause of action is denied and an amendment to the complaint will be allowed.

No disposition or mention has been made herein of the second cause of action based upon the Soldiers' and Sailors' Civil Relief Act of 1940. It is noted, however, that the affidavits and other papers filed in the cause show that the contract and business dealings between the parties were exclusively between Chrysler Corporation and Case-Kane Co., a corporation of the State of New York; that at the time the individual plaintiffs entered the Armed Forces of the United States in 1942 neither of the individual plaintiffs was a stockholder of Case-Kane Co. or any officer thereof, or had any connection therewith except as an employee. No authority has been suggested holding that an acquisition of stock ownership by a soldier or sailor after he has entered into the Armed Forces would prevent the termination of corporate contracts entered into before such soldier or sailor became a stockholder of the corporation and before he entered into the Armed Forces of the United States.

■ The defendant's motion for summary judgment is based upon the entirety of the complaint. That motion as made cannot be granted and is denied with leave to the plaintiffs to amend their complaint within 20 days after the date of an appropriate order denying the motion for summary judgment.