**ROYALL v. CHICAGO STREAMLITE CORPORATION.**

No. 9878.

United States Court of Appeals
Seventh Circuit.

Dec. 5, 1949.

Rehearing Denied Jan. 4, 1950.

Victor E. La Rue, Chicago, Ill., Leo S. Samuels, Chicago, Ill. (William B. Goodstein and Ruth L. Leffler, Chicago, Ill., of counsel), for appellant.

Nathan Engelstein, Chicago, Ill., Albert L. Verb, Chicago, Ill. (Earl Freeman, Chicago, Ill., of counsel), for appellee.

Before KERNER, FINNEGAN, and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

This appeal is from a judgment for plaintiff in a suit to recover commissions alleged to be due on the fleet sale by defendant of forty trailers in territory in which plaintiff claimed to be exclusive authorized dealer for defendant.

*The facts.* Plaintiff started in business handling new and used trailers in October, 1946. In December, 1946, he wrote to defendant to inquire about a franchise to handle its line. In response, defendant on January 7, 1947, wrote the following letter which, as modified by subsequent dealings, is relied upon to establish the contract here in suit:

"Thank you for your recent communication, regarding dealership for Raleigh, North Carolina, County of Wake. We, herewith, enclose dealer's discount sheets which show wholesale and retail prices of the Shoreland Tandem and Princeton, now in present production, and also cost of freight.

"Territory: An authorized Streamlite dealer has exclusive territorial arrangements, and no other dealer will be authorized by us to set up a sales display anywhere in the county allocated to the dealer. Any inquiries emanating from the territory, whether wholesale or retail, will be referred to the dealer. An authorized dealer may set up a subdealership in his county with our permission.

"Resale Price: The delivered price of the 1947 Shoreland Tandem and Princeton is clearly stated on each Bill of Sale. This list price is public information to retail inquiries and may be stated from time to time in our National Advertising Program.

"Original Purchase: To establish an authorized dealership an original order of three (3) trailer coaches is required. A deposit of one thousand dollars * * * on each trailer coach is to accompany the original order. Deliveries will be made, one in January, one in February, and one in March, 1947.

"Terms of Sales: The balance of each trailer coach is to be paid by cashier's or certified check at the factory before shipment is made. We will notify you approximately one week prior to the date of shipment so you will have ample time to mail your check.

"Future Purchases: In order to insure the continuity of your franchise purchases are to be made during each quarter of the year. If you wish to obtain a Streamlite Franchise please act promptly, as we are only franchising a limited number, and they will be issued on a 'first come, first served' basis."

Plaintiff did nothing further at that time. In October, 1947, one Powers, a salesman employed by defendant, called on plaintiff. According to plaintiff, he inquired why he had not ordered any trailers and remarked that plaintiff had not replied to any letters and he wondered why he had not signed any contract. When plaintiff told him the deposit requirement was too much, Powers told him they had a better proposition, that if plaintiff purchased one model outright, paying for it in full, and gave a $400 deposit on two more, he could obtain the franchise. Plaintiff thereupon arranged for financing such purchase and gave Powers two checks dated October 13, 1947, payable to defendant. One was for $1,803.70 in full payment for one Sun model trailer, and the other, for $400 as a deposit on two other trailers. He later received a letter, dated October 21, acknowledging receipt of the checks and stating, "We are setting you up as our established dealer at Raleigh, North Carolina, Wake County."

Plaintiff further testified that he had sold defendant's "line of trailers" after October 13, and that he had also handled other lines during the period, and that "we received 25 per cent, that was our payment" for the trailers sold.

In November, 1947, the State of North Carolina advertised for bids for the purchase of forty trailers *having certain specifications*. The day before the bids were due and to be opened the Palace Corporation whose franchise plaintiff held telephoned him from Michigan to ask that he find out about bids, whereupon he went to the Purchasing Department and obtained information as to procedure in putting in bids and about the price range. He obtained a copy of the specifications and submitted a bid for Zimmer trailers, another line he was handling, a competitor of defendant. He made no effort to notify defendant of the request for bids. However, on the morning of the day the bids were to be opened he went to the Capitol and there saw Powers who told him that defendant had been notified of the impending bids by the Manufacturers' Association and he was there to put in a bid, and that he understood that no dealers could put in bids, that it was strictly manufacturers' bids, and if he had known dealers could bid he would have wired plaintiff to take care of it and he could have got a commission.

The contract for the forty trailers was awarded to defendant on its bid of $1,646 apiece, or a total of $64,266. Relying on the provision in the January 7 letter, "Any inquiry emanating from the territory, whether wholesale or retail, will be referred to the dealer," plaintiff put in his claim for 25% of the total contract price of the trailers, although on the hearing he stated, "I would only claim 25 per cent of the f. o. b." and again, that he did not claim any commission on the freight. The record shows that defendant's bid was for $1,656 f. o. b. Raleigh, or $1,495 f. o. b. its plant in Chicago.

Plaintiff based his demand for 25% commission on the fact that he always received 25 per cent and that Powers told him that was the discount, and he had copies of the price lists showing the discounts—"in other words, they set the prices on the trailers and then give us 25 per cent discount."

The court construed the letter of January 7, together with the conversation with Powers, the order for three trailers, and the letter of October 21, as establishing an agency contract between the parties. He stated that it seemed absurd to him to talk about setting anyone up as a dealer without having outlined the terms, hence that the only inference to be drawn was that defendant set plaintiff up as a dealer under the terms of the January 7 letter as modified by the oral agreement evidenced by the two checks. He considered it immaterial that plaintiff had not put in a bid for defendant but had put in a competitive bid—"There isn't any requirement in the contract that he should not." He therefore found that plaintiff was entitled to commissions of 25% of any sales made, and awarded judgment of $16,066 for the sales to the State.

Plaintiff asserts that the validity of the contract is not now in issue and never has been. If by that he means that defendant has never denied that he is its "established dealer," that seems to be true—it does not appear that defendant has ever sought to terminate the relationship. However, the rights created by that relationship and the obligations imposed by it appear to us to be open to serious question. While the rights of an "authorized dealer" appear to be very broad, by the definition of the letter, they do not appear to be accompanied by correspondingly broad duties or obligations. In fact, the agreement imposes no obligations whatever upon him beyond the initial order necessary to bring it into effect—he was not even required to sign a contract. There was no requirement that the trailers purchased under the agreement be sold at list price, although the price list was furnished; there was no requirement as to when the initial purchases had to be completed—according to the original letter, the dealership was to be established upon the receipt of three orders accompanied by a $1,000 deposit for each, with delivery of one each month upon final payment, but this was subsequently modified to permit the outright purchase of one and a deposit of $200 on each of two others, and there does not appear to have been any arrangement as to when the purchases of these two should be completed; there was no requirement, as in the cases cited by plaintiff involving automobile dealer contracts, that the dealer provide and maintain show rooms or service facilities of a certain standard, or that he handle defendant's product exclusively. Further, the agreement made no provision for term or termination unless we construe the last paragraph of the letter as such: "In order to insure the continuity of your franchise purchases are to be made during each quarter of the year." And here again, the number of purchases required to insure continuity was not specified.

█ It is a rule of contract law that "The offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain." Restatement of Law, Contracts, § 32. With respect to automobile agency contracts this has been construed to mean that although the exact quantity is not defined, a "requirements" contract is valid when the obligation of both parties is or can be ascertained. See 1 Williston on Contracts (Rev.Ed.), § 104A. In Moon Motor Car Co. v. Moon Motor Car Co., 2 Cir., 29 F.2d 3, 4, the court said, "There is no objection to a promise that it is indefinite so long as the parties can tell when it has been performed, and it is enough if, when the time arrives, there shall be in existence some standard by which that can be tested." But here there was no promise on the part of the plaintiff for any future performance. The contract was completely illusory so far as further performance was concerned.

The invalidity of such an agreement and the unenforceability of the so-called promise here relied upon by plaintiff to support his claim are well illustrated by at least two of the cases from which he quotes. In discussing the automobile dealer contract, the court in Kane v. Chrysler Corporation, D.C., 80 F.Supp. 360, 363, said, "They have been developed to meet the distribution needs of manufactured products where such distribution cannot be

had upon merit alone. In many cases the product or model is new and the sales must be encouraged by expensive show rooms, service stations and by intensive and extensive advertising and salesmanship. The services of the dealer call for a considerable investment with uncertain result." The court, 80 F.Supp. at page 364, went on to discuss the situation where, in connection with a contract of indefinite amount or uncertain deliveries, an unrestrained right of cancellation is reserved to one or both parties, in which case it held that the contract is properly held binding only insofar as it has been executed. "An executory portion of the contract with no specific obligation of performance and a duration terminable at will by an unrestricted option to terminate lacks consideration and validity." To the same effect is Bendix Home Appliances v. Radio Accessories Co., 8 Cir., 129 F.2d 177, also relied upon by plaintiff. See also Ken-Rad Corp. v. R. C. Bohannan, Inc., 6 Cir., 80 F.2d 251; A. Santaella & Co. v. Otto F. Lange Co., 8 Cir., 155 F. 719. Williston said of this type of contract (4 Contracts, § 1027A), "The validity of such exclusive sales agencies or of such exclusive sales and distribution contracts during their continuance is obvious. As executory agreements, they are binding if they satisfy the requisites of manifested mutual assent and consideration."

■ It is obvious from the facts of this case that not only was the agreement indefinite in its terms and lacking in mutual assent and consideration, but further, that plaintiff did not consider himself bound by any obligations to defendant. Having learned of the impending purchase from one of his manufacturers at least 24 hours before bids were to be opened, he made no attempt whatever to ascertain whether defendant knew of it, but instead put in a bid for a third manufacturer which he also represented.

We find no basis for the recovery by plaintiff of any amount as commissions on the North Carolina sale.

Judgment reversed and cause remanded with directions to dismiss the complaint. ·